## STATE v. WERNER H. RUFF.[1]

January 25, 1929.

No. 27,305.

See note in 47 A. L. R. 141; 28 R. C. L. 440; 5 R. C. L. Supp. 1538.

*E. S. Cary,* for relator.

*G. A. Youngquist,* Attorney General, *Floyd B. Olson,* County Attorney, and *William C. Larson,* Assistant County Attorney, for the state.

STONE, J.

Appearing as a witness before the grand jury in Hennepin county, the relator refused to answer certain questions upon the ground that his answers might incriminate him. The grand jury presented the matter to the district court, and relator was thereupon ordered again to appear before the grand jury and answer the questions. Persisting in his refusal, he was adjudged guilty of contempt. The matter is now before us upon certiorari to review that conviction.

Relator's claim of the privilege of secrecy is made under the mandate of art. 1, § 7, of the constitution of Minnesota, that "no per-

[1]Reported in 223 N. W. 144.

son * * * shall be compelled in any criminal case to be a witness against himself." The state urges that relator cannot claim that privilege because of G. S. 1923, § 9982, which, after defining the crime of bribery of a public officer and prescribing the penalty, continues as follows:

"No person shall be excused from attending and testifying before any court or magistrate upon an investigation, proceeding or trial for a violation of any of the provisions of this act upon the ground, or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or subject him to a penalty or forfeiture, but no person shall be prosecuted, or subjected to any penalty or forfeiture for, or on' account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding."

The issue thus raised seems never before to have been presented to this court, but by an overwhelming weight of authority elsewhere it is settled in favor of the state. The constitutional provision against compulsory self-incrimination, while varying slightly in form, is found in the bills of rights of all of the state constitutions and in the fifth amendment to the constitution of the United States. Its meaning, as determined in the light of its origin and history, is not in doubt. The purpose is common to all American constitutions, so that there is not only manifest propriety in adopting the settled view of the Supreme Court of the United States but, in the interest of the uniformity and symmetry of our constitutional law, a compelling need for doing so. Fortunately the question has been definitely settled by that tribunal.

Under the original "act to regulate commerce," approved February 4, 1887, c. 104 (24 St. L. 379), testimony was once sought from a reluctant witness before the interstate commerce commission notwithstanding his claim of the privilege of secrecy. Section 860 of the Revised Statutes then provided that disclosures by a party or witness made "by means of a judicial proceeding" should not "be

given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture." In Counselman v. Hitchcock, 142 U. S. 547, 564, 12 S. Ct. 195, 35 L. ed. 1110, it was held that the statute did not go far enough; that it did not offer the same protection as that of the constitutional privilege of secrecy and therefore was not an adequate 'substitute therefor. The statute, the court said, "protected him [the witness] 'against the use of his testimony * * * in any prosecution against him or his property * * *.· But it had only that effect. It could not, and would not, prevent the use of his testimony to search out other testimony to be used in evidence against him or his property, in a criminal proceeding * * *. It could not prevent the obtaining and the use of witnesses and evidence which should be attributable directly to the testimony he might give under compulsion, and on which he might be convicted, when otherwise, and if he had refused to answer, he could not possibly have been convicted." In consequence, the position of Counselman in refusing to answer and claiming the privilege of secrecy was confirmed.

Later the act of congress was amended so as to exempt a witness from prosecution on account of any transaction to which he might testify before the interstate commerce commission, and it was held in Brown v. Walker, 161 U. S. 591, 16 S. Ct. 644, 40 L. ed. 819, to satisfy the constitutional protection against compelled self-incrimination. There were forceful dissents by Mr. Justice Shiras and Mr. Justice Field, the former having the concurrence of Mr. Justice Gray and Mr. Justice White. But the position taken by the majority has never been departed from nor even qualified and now has the concurrence of a preponderating weight of authority elsewhere. Briefly its logic is as follows:

The ancient principle of the English law of evidence, now written into our bill of rights, is that "a witness shall not be, compelled, in any proceeding, to make disclosures or to give testimony which will tend to criminate him or subject him to fines, penalties or forfeitures." [142 U. S. 563.] It was designed to prevent the ex-

traction from him against his will of information of any kind which would aid or lead directly or indirectly to any sort of prosecution against him or any proceeding against his property. It was not designed to protect him from the disclosure of any offense against the moral law or any acts subjecting him to embarrassment or disgrace so long as there was no possibility of criminal prosecution. The subjection of the witness to fines, penalties or forfeitures being the thing guarded against, the privilege did not exist in a case where any offense on the part of the witness which he might disclose had been put beyond the reach of punitory legal procedure by a statute of limitations, a pardon, or general amnesty. Statutes of the kind in question have the effect of preventing effectually any adverse proceeding against the witness resulting even remotely from his disclosures because in making them he procures the amnesty provided by the statute.

Under such statutes, the witness is "secured against all liability to future prosecution as effectually as if he were wholly innocent. * * * The conditional exemption becomes absolute when the witness testifies; and, being no longer liable to prosecution, he is not compelled, by testifying, to accuse or furnish evidence against himself. * * * The legal protection of the witness against prosecution for crime disclosed by him is, in law, equivalent to his legal innocence of the crime disclosed. * * * The witness, regarded in law as innocent if prosecuted for a crime which he has been compelled by the statute to disclose, will stand as well as other innocent persons; and it was not the design of the common law maxim, affirmed by the Bill of Rights, that he should stand any better." State v. Nowell, 58 N. H. 314, 315, quoted with approval in Brown v. Walker, 161 U. S. 591, 602, 16 S. Ct. 644, 40 L. ed. 819.

Brown v. Walker is authority also for the conclusion that the bare possibility that a witness, by a disclosure compelled under the statute in question, may be subjected to the criminal laws of some other state or of the federal government or that he may be put to the annoyance and expense of pleading and proving his immunity should a subsequent prosecution be attempted, does not make the

statutory immunity insufficient to satisfy the constitutional prohibition against compulsory self-incrimination. For other authorities, see 28 R. C. L. 440, and 40 Cyc. 2543.

Judgment affirmed.