STATE v. HARVEY J. NOLAN.
STATE v. SHERBURN B. FLOWERS.[1]

July 28, 1950.

Nos. 35,194, 35,195.

[1]Reported in 44 N. W. (2d) 66.

524

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, *James F. Lynch,* County Attorney, and *Richard B. Ryan* and *John P. Frank,* Assistant County Attorneys, for the State.

*Cummins, Cummins & Hammond,* for defendants.

LORING, CHIEF JUSTICE.

These cases came here on a certified question after the trial court had overruled the defendants' demurrers and denied their motions to quash indictments which charged that on April 28, 1949, defendants "falsely swore under oath" while testifying before the public examiner relative to a transaction between the Minnesota Four Wheel Drive Company, Inc., and a Minnesota city. The examiner was investigating that transaction to ascertain whether there was a bribe given to the mayor of the city in connection with the sale of a truck to the city by that company, of which defendants were officers and principal stockholders. They were before a deputy public examiner on that date in response to subpoenas duly issued by the examiner and served upon them.

The motions to quash were supported by affidavits which asserted that prior to their examination defendants had informed the public examiner that they were "standing on their constitutional rights and refusing to testify" on the ground that their testimony would tend to incriminate them because the examiner "was developing facts to charge" them "with crimes." This is not denied by the state. On the contrary, the state admits that the statements in the affidavits are substantially true. In spite of defendants' objections, the examiner insisted upon their testifying relative to the transaction for the sale of the truck, threatening them with a court order if they refused. They yielded and testified, and it is in this testimony

that the indictments charge that they "falsely swore under oath."

The question certified to us by the trial court reads as follows:

"Does the Constitution of the United States, the Constitution of the State of Minnesota, Section 613.04, R. S. 1945, or Section 610.47, R. S. 1945, grant immunity to a defendant from prosecution under Section 215.17, R. S. 1945, when he testifies under compulsion before the Public Examiner under the authority granted in Section 215.16, R. S. 1945, when such testimony is false?" (Obviously, the court refers to sections in the Minnesota Statutes Annotated, usually cited as M. S. A.)

We answer the question only to the extent of its relevancy to the issues raised by the court's action now before us. It is conceded by the parties that no decision of this court has been found which is directly in point.

■ On the face of the indictment, the transaction investigated was between the company and the city, but the defendants here asserted in their affidavits that they, as officers and principal stockholders, were being investigated with a view to developing facts to charge them with crimes. The state, in effect, admits this. Such being the case, unless they were effectively granted immunity by some statute, they could be prosecuted and punished for participation in the bribery and consequently could not be compelled by any court or administrative agency to incriminate themselves in regard thereto, or to testify. Minn. Const. art. 1, § 7. The constitutional privilege extends with full force to an investigation by an administrative officer. 8 Wigmore, Evidence (3 ed.) § 2282, p. 516, *et seq.*

■ In order to justify compulsory answers which tend to incriminate the person being examined, the statutory immunity must be coextensive with the protection afforded by Minn. Const. art. 1, § 7. It must be as broad as the crime being investigated. As some courts say, it must, as to the person being examined, obliterate the crime[2]; or, as this court said, in State v. Ruff, 176 Minn. 308, 311, 223 N.W. 144, 145, the witness must be "put beyond the reach

[2]Matter of Doyle, 257 N. Y. 244, 267, 177 N. E. 489, 497, 87 A. L. R. 418.

of punitory legal procedure." As said by the supreme court of New Hampshire (State v. Nowell, 58 N. H. 314, 316), cited in the Ruff case, the protection extended must be "equivalent to his legal innocence of the crime disclosed." See, also, Counselman v. Hitchcock, 142 U. S. 547, 585-586, 12 S. Ct. 195, 206, 35 L. ed. 1110, 1122; Glickstein v. United States, 222 U. S. 139, 141, 32 S. Ct. 71, 72, 56 L. ed. 128, 130.

 M. S. A. 215.16 provides:

"In all matters relating to his official duties, the public examiner shall have the powers possessed by courts of law to issue subpoenas and cause them to be served and enforced. * * * all corporations, firms, and individuals having business involving the receipt, disbursement, or custody of the public funds shall at all times afford reasonable facilities for such examinations, make such returns and reports to the public examiner as he may require, *attend and answer under oath his lawful inquiries,* * * *." (Italics supplied.)

This statute does not of itself provide any immunity whatever for a witness requested to give self-incriminating testimony, nor does it specifically define "lawful inquiries" to include questions, the answers to which might reasonably be so regarded if the witness objected thereto on the ground that his answer might tend to incriminate him. In its ordinary meaning, a "lawful inquiry" would not include such questions.

 Section 613.04 of the bribery statute, which was before this court in State v. Ruff, 176 Minn. 308, 223 N. W. 144, provides immunity for a witness required to answer self-incriminating questions before "any court or magistrate" in an investigation, proceeding, or trial for the violation of the bribery statute. Since the public examiner is not a court or magistrate and could not, under Minn. Const. art. 3, be given judicial powers to pass upon objections to questions made, on the ground that answers would tend to incriminate the witness, this section grants no immunity to a witness sworn before the public examiner.

That the power to rule upon whether there is reasonable ground to apprehend that the evidence will tend to incriminate the witness is a judicial question is established in the leading case of State v. Thaden, 43 Minn. 253, 45 N. W. 447.[3]

Section 610.47 provides:

*"In every case in the Minnesota Statutes where it is provided that a witness shall not be excused from giving testimony tending to criminate himself,* no person shall be excused from testifying or producing any papers or documents on the ground that his testimony may tend to criminate him or subject him to a penalty or forfeiture; but he shall not be prosecuted or subjected to a penalty or forefeiture for or on account of any action, matter, or thing concerning which he shall so testify, except for perjury committed in such testimony." (Italics supplied.)

This section does not apply to an examination conducted under § 215.16, because the latter section contains no such provision as that italicized above, upon which the immunity is conditioned.

M. S. A. 613.16[4] provides:

"Every person offending against any provision of law relating to bribery shall be a competent witness *against another so offending,* and may be compelled to attend and testify upon any trial, hearing, proceeding, or *investigation,* in the same manner as any other person; but, if prosecuted or indicted *for such bribery,* he may plead or prove the giving of such testimony in bar thereto." (Italics supplied.)

It is very difficult to interpret this section as granting immunity in the case at bar. Of course, a witness is not incompetent because he was involved in the bribery under consideration. The compulsion to testify is by this section limited to "in the same manner as any

---

[3]Wigmore, in his work on evidence, says of State v. Thaden (8 Wigmore, Evidence [3 ed.] § 2271, p. 406):

"This summing-up of Mr. Justice Mitchell leaves nothing to be added, and ought to remain the last word in the development of the rule."

[4]Evidently taken in part from Laws of New York 1853, c. 539, § 14.

other person." "Any other person" might obviously raise the question of constitutional privilege. The most that can be said for the section is that it allows a plea in bar in behalf of an accused who has given evidence "against another" relative to the same offense. These defendants were being investigated with a view to charging them with crime. The cases recognize a clear distinction between an accused and one who is examined in a proceeding against another. The accused may not be required to be a witness against himself. A person who is a witness only must object to answering each question on the ground that the answer will tend to incriminate him. McCarthy v. Clancy, 110 Conn. 482, 148 A. 551. Defendants are not here charged with bribery, nor were they likely to be if the examiner believed what he said to them in regard to their immunity. But if, as a matter of fact, they were the real objects of the investigation, as is practically conceded, they were in a similar postion to one examined under a John Doe warrant in South Dakota. The corporation herein named in the subsequent indictment as being under investigation could be fined, but not sent to jail. It is altogether unlikely that the examiner would be satisfied with that, and the inference is that defendants were the real objects of the investigation. State v. Smith, 56 S. D. 238, 228 N.W. 240. It is significant that the mayor (who was the other party to the transaction, accused of having received the bribe) testified before the grand jury which indicted these defendants for false swearing. He was evidently considered by the examiner to be immunized.

■ But whether or not the legislature had provided adequate immunity so that defendants could have been compelled to testify relative to the transaction being investigated, they were not justified or protected in testifying falsely before the examiner. They might, unless granted adequate immunity, refuse to testify, but could not with impunity testify falsely. The proper procedure was taken by defendant Ruff, in his case cited above (176 Minn. 308, 223 N.W. 144) when brought before the grand jury, although

he was in the end required to answer fully before the grand jury, an arm of the court.

The vital question in these cases is whether defendants, not having availed themselves of their constitutional privilege by standing mute until they awaited judicial determination of whether there was reasonable apprehension of self-incrimination on their part and whether adequate immunity was extended to them by statute, but having chosen to yield to the insistence of the examiner and having testified, may now successfully plead immunity, not from an accusation of bribery, but from prosecution for testifying falsely before the examiner (as the indictments charge).

The overwhelming weight of authority is to the effect that they may be subjected to punishment for their answers if they prove to be false. The immunity extended by the constitution and by statutes, if any, is for past offenses, not for such offenses as may be committed while testifying under the immunity. In Glickstein v. United States, 222 U.S. 139, 141, 144, 32 S. Ct. 71, 72, 73, 56 L. ed. 128, 130, 131, the Supreme Court of the United States, speaking through Mr. Chief Justice White, said:

"1st. It is undoubted that the constitutional guarantee of the Fifth Amendment does not deprive the law-making authority of the power to compel the giving of testimony even although the testimony when given might serve to incriminate the one testifying, provided immunity be accorded, the immunity, of course, being required to be complete; that is to say, in all respects commensurate with the protection guaranteed by the constitutional limitation. * * *

"2nd. As the authority, which the proposition just stated embraces exists, and as the sanction of an oath and the imposition of a punishment for false swearing are inherently a part of the power to compel the giving of testimony, they are included in that grant of authority and are not prohibited by the immunity as to self-incrimination. * * * This must be the result, as it cannot be conceived that there is power to compel the giving of testimony where no right exists to require that the testimony shall be given under

530

such circumstances and safeguards as to compel it to be truthful. In other words, this is but to say that an authority which can only extend to the licensing of perjury is not a power to compel the giving of testimony. Of course, these propositions being true, it is also true that the immunity afforded by the constitutional guarantee *relates to the past* and does not endow the person who testifies with a license to commit perjury. * * *

\* \* \* \* \*

"Some of the considerations which we have pointed out were accurately expounded in Edelstein v. United States [9 L.R.A. (N.S.) 236, 79 C. C. A. 328], 149 Fed. Rep. 636, by the Circuit Court of Appeals for the Eighth Circuit, and in Wechsler v. United States [86 C. C. A. 37], 158 Fed. Rep. 579, by the Circuit Court of Appeals for the Second Circuit. And this leads us to observe that the necessary result of the conclusion now reached is to disapprove the opinions in In re Marx et al. [6 Cir.] 102 Fed. Rep. 676, and In re Logan [6 Cir.] 102 Fed. Rep. 876." (Italics supplied.)

As said by this court in State v. Ruff, 176 Minn. 309, 223 N.W. 144:

"* * * The constitutional provision against compulsory self-incrimination, while varying slightly in form, is found in the bills of rights of all of the state constitutions and in the fifth amendment to the constitution of the United States. Its meaning, as determined in the light of its origin and history, is not in doubt. The purpose is common to all American constitutions, so that there is not only manifest propriety in adopting the settled view of the Supreme Court of the United States but, in the interest of the uniformity and symmetry of our constitutional law, a compelling need for doing so. Fortunately, the question has been definitely settled by that tribunal."

Like considerations persuade us to adopt a rule in the cases at bar in harmony with the views of the Supreme Court of the United States. The cases cited by defendants are not persuasive that we should adopt a different view.

The question certified must be answered in the negative.
So adjudged.

MR. JUSTICE THEODORE CHRISTIANSON, having been of counsel in the court below, took no part in the consideration or decision of this case.

