William J. TURCK, Appellant,

v.

ST. CLOUD CIVIL SERVICE BOARD, et al., Respondents.

No. 48095.

Supreme Court of Minnesota.

June 2, 1978.

Meshbesher, Singer & Spence and Carol M. Grant, Minneapolis, for appellant.

Bernard E. Boland, City Atty., St. Cloud, for respondents.

PER CURIAM.

William Turck appeals from an order of the Stearns County District Court affirming a decision of the St. Cloud Civil Service Board which sustained his dismissal from his position as a police officer of the St. Cloud Police Department. The major issue raised is whether the dismissal violated an "Employee Assistance Policy" adopted by the city in May 1975. We hold that it did not, and affirm.

On July 12, 1975, while driving a private automobile, Turck struck a parked car. He was subsequently charged with driving while under the influence of an alcoholic beverage, and on Monday, July 14, was relieved of duty pending investigation of the accident. He then talked to Captain Robert Wittschen who, appellant said, advised him to admit he was drunk and recommended counseling. Wittschen said he told appellant he knew there was an employee assistance program but was not familiar with it. Appellant then consulted Robert Freitag, a chemical dependency counselor at the Central Minnesota Mental Health Center, who concluded that appellant was an alcoholic and recommended inpatient treatment at the St. Cloud Hospital. On July 17 appellant was suspended for 30 days by Police Chief Nicholas Grams. At Chief Grams' suggestion appellant went to see the mayor on August 5. At the mayor's request appellant brought a letter from Freitag which recommended appellant be given an opportunity to enter the St. Cloud hospital's treatment program, which Freitag thought would last 28 days. The mayor testified that appellant agreed to undergo this treatment; appellant said he did not make a "positive commitment."

On August 13 his then attorney wrote to the city attorney that appellant would enter the treatment program with the understanding he would be granted sick leave. Appellant then decided not to enter it when he found it would take 8 weeks. That evening he reported for work on the mid-

night shift and was told he had been placed on extended sick leave and sent home. On August 14 Chief Grams dismissed him from his employment.

At the request of appellant's present counsel, the mayor reviewed the chief's decision. He upheld it and sent appellant's attorney the "Statement of Charges" on which the dismissal had been based. Covering a period from July 1970 to July 1975, they ranged from minor offenses (wearing nonregulation boots, being late for duty on several occasions, failure to ticket an illegally parked car, inaccurately filling out parking tickets) to charges of abuse of sick leave, two earlier preventable automobile accidents, disorderly conduct and resisting arrest in an offduty domestic altercation, sleeping on the job, and the automobile accident which resulted in the DWI charge. The more serious incidents had occurred within the 11 months before appellant's dismissal. Some charges had resulted in reprimands, a few in loss of pay, the disorderly conduct charge had brought a 15-day suspension, and the sleeping-on-the-job charge had brought a 30-day suspension.

The Statement of Charges also included the following:

"In addition, Mr. Turck has been diagnosed as having 'a rather serious alcohol problem' * * *. Freitag recommended treatment at the Alcohol and Chemical Dependency Unit of the St. Cloud Hospital for approximately 28 days. * * * Mr. Turck did not go to St. Cloud Hospital, or any other treatment center, for such treatment."

At the hearing before the Civil Service Board in September 1975, appellant's attorney made a motion—on which the board then reserved decision—that the board rule that employee could not be discharged for his failure to undergo the recommended treatment of his alleged alcoholism.

The initial hearing was recessed until May 1976, by which time appellant had entered a negotiated plea of guilty to a

charge of careless driving. In its decision the board denied the motion—

"* * * because the Employee Assistance Policy had not been implemented at the time of the dismissal, and in addition the dismissal was based on a number of incidents of on-duty and off-duty misconduct in addition to the alcohol problem."

It found the city's charges substantiated by the evidence with the exception that appellant had been found guilty of careless driving rather than the DWI charge; that he admitted he had been intoxicated at the time of the July 1975 accident; and that he had a problem with alcohol and "made no effort to obtain help to alleviate the problem prior to his dismissal." It also found the Employee Assistance Policy had not been implemented at the time of the dismissal. It concluded that appellant had been dismissed for just cause.

In upholding the board's decision, the district court viewed the Employee Assistance Policy as in effect although not implemented at the time of the discharge, but rejected the claim that appellant's dismissal had been in violation of the policy. Although conceding that the board had given consideration to appellant's alleged alcohol problem in finding just cause for the dismissal, the court added:

"* * * However, the Board also based its findings on seventeen separate charges relating to job performance. Upon review of the record, it appears to this court that even in the absence of any consideration of the alleged alcohol problems of the Relator, there is sufficient basis for the discharge."

On appeal appellant insists that the Employee Assistance Policy restricted the city's power to dismiss him summarily when he decided not to enter the treatment program. He views the policy as supplementary to the city's civil service rules and claims it restricted the city's power to discharge him under St. Cloud Civil Service Rule 705 [1]

1. Like Minn.St. 44.08, subd. 1, Rule 705 provides that no permanent employee in the classified service may be dismissed except for "just cause which shall not be religious, racial, or for political opinion."

when he refused to undergo the recommended treatment. Appellant's claim is not borne out upon consideration of the policy as a whole although it is obviously meant to afford assistance and some degree of protection to employees with a wide range of personal problems including alcoholism.

The policy states the city's recognition that such problems can be successfully treated if recognized and referred to appropriate care at an early stage. Its purpose is—

" * * * to assure employees that if such personal problems are the cause of unsatisfactory job performance they will receive careful consideration and an offer of assistance to help resolve such problems in an effective and confidential manner."

It provides also that sick leave may be granted for diagnosis, treatment, or rehabilitation. It also provides:

"12. Implementation of this policy will not require or result in any special regulations, privileges or exemptions from standard administrative practices applicable to job performance requirements."

The policy contemplates four phases:

"1. Identification by the supervisor of a continuous job performance problem.

"2. Referral by the supervisor of the troubled employee to the resource person or agency professionally competent to diagnose problems.

"3. Diagnosis and referral to the proper treatment modality.

"4. Counseling, treatment and follow-up as needed to resolve the problem."

▮▮▮ The policy admittedly had not been implemented at the time of appellant's discharge, and it does not appear that the city complied with phases (1) and (2) *supra*. Since appellant sought counseling for his alleged problem himself, however, this noncompliance cannot be viewed as prejudicial. As stated, the city placed appellant on extended sick leave so that he could receive the recommended treatment, but he refused it. The provision which he contends prohibited the city from discharging him the following day states:

"7. If the employee refuses the offer of help *and job performance or attendance problems continue*, the regular disciplinary procedures will apply." (Italics supplied.)

We construe this provision, however, as meaning that the city cannot discharge an employee solely for his refusal of assistance with his problem, but has the right to discharge him for misconduct relating to his work and serious enough to constitute just cause under its civil service rules. Any other construction of the provision would deprive Paragraph 12, *supra*, of its intended effect and would also ignore the recognition of the city's right to discharge for such misconduct which appears in the following provision:

"3. *When the Employee Denies Problem or Refuses City Program*: * * * Personal records of action taken or *decisions to terminate are to be related to the unsatisfactory performance or attendance (whatever it may be) and not to personal problems*." (Italics supplied in part.)

▮▮▮ We conclude that the Employee Assistance Policy, while a humane and progressive step in the city's relations with its employees, does not preclude a discharge not related solely to a personal problem to which the policy applies. Appellant has not challenged the court's determination that the board's findings had substantial evidentiary support. In light of the high standard of conduct required of a policeman, the court's further determination that the employment-related charges, even in the absence of consideration of appellant's alleged alcoholism, constituted just cause for his discharge was clearly correct.

▮▮▮ The other issues raised by appellant require little discussion. He claims that St. Cloud Civil Service Rule 707 precludes a department head from suspending and then discharging an employee. The rule provides:

"In every case of suspension, demotion, *or* dismissal \* \* \*, the department head shall give written notice to the employee, \* \* \*.

"If an employee wishes to appeal a suspension, demotion *or* dismissal, he may do so \* \* \* ." (Italics supplied.)

Appellant urges that this rule limits a department head to suspending, demoting, *or* dismissing an employee, so that once he has been disciplined on a charge concerning his job performance, the incident cannot be considered in subsequently determining whether he should be discharged. He relies on cases involving an ordinance and a statute providing in alternative language for punishment for their violation,[2] but Rule 707 relates to the right of an employee to receive notice and to appeal if he is suspended, demoted, or dismissed. It has no bearing on the grounds for dismissal or on the department head's authority to discipline employees. Appellant also ignores the plain implication of Civil Service Rule 709— providing for reinstatement of an employee found innocent of charges of misconduct "if he has been suspended pending investigation"—that an employee's suspension can be followed by dismissal.

■ Appellant's final claim, that the city waived its right to consider earlier incidents of misconduct as grounds for discharge because the police department had disciplined him when they occurred, is without merit. We conclude that the district court properly upheld his discharge.

Affirmed.

**2.** See, *Ostler v. Omaha*, 179 Neb. 515, 138 N.W.2d 826 (1965) (municipal code provision); *State ex rel. Heffernan v. Board of Fire and Police Commrs.*, 247 Wis. 77, 18 N.W.2d 461 (1945) (statute).