293 N.W.2d 411 (1980)
206 Neb. 500
Jeffrey M. ADKINS, Appellant,
v.
NORTH PLATTE CIVIL SERVICE COMMISSION, Appellee. Lance W. WEBSTER, Appellant,
v.
NORTH PLATTE CIVIL SERVICE COMMISSION, Appellee.
Nos. 42886, 42889.
Supreme Court of Nebraska.
June 17, 1980.
*412 J. Murry Shaeffer, Lincoln, for appellants.
Kay & Satterfield, North Platte, for appellee.
Heard before BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.
McCOWN, Justice.
This is an appeal from orders of the civil service commission of the City of North Platte, Nebraska, discharging the plaintiffs from the police force. On appeal, the District Court for Lincoln County, Nebraska, found that the discharge in each case was made in good faith for cause, was not arbitrary or capricious, and was not motivated by political reasons, and affirmed the orders of discharge. The plaintiffs have appealed and the cases have been consolidated in this court.
Shortly before midnight on May 28, 1978, the plaintiffs, Webster and Adkins, along with several other North Platte police officers, were dispatched to the area of 11th and Jessie Streets in connection with reports of a traffic accident in the area and of a man with a gun. In the course of a search, Webster and another officer found Harold Cummings making a disturbance in *413 the area. Cummings was very intoxicated and was identified by a resident as the man who had carried a gun and broken into a trailer house. Webster and another officer arrested Cummings. When they attempted to handcuff him and place him in a police car, he became violent, and kicked and swore at the officers, and Officer Webster and another officer wrestled him to the ground and handcuffed him. Three officers then lifted Cummings into a police car and Webster took him to the Lincoln County jail. Webster testified that Cummings became violent again on the way to the jail.
Meanwhile, Officer Adkins and another officer had gone ahead to the jail and advised the jail personnel that they were bringing in a violent prisoner. When Officer Webster arrived at the jail with Cummings, Officer Adkins went out to assist him. The officers pulled Cummings out of the car by his arms and bodily carried him, one on each arm, into the elevator to the jail. The officers testified that they had to carry Cummings beneath the arms because he gave them no help whatsoever and was unresponsive to orders to walk or assist them.
All the witnesses at the jail when Cummings was brought in testified that Cummings was not actively resisting in any way nor saying anything. There were no bruises or marks on Cummings' face when he was brought into the jail.
The two officers took Cummings into the receiving area where they removed his boots and the handcuffs and took the property out of his pockets. The jailer testified that they then took Cummings to the photo room where Cummings was asked to stand against the photo room board. Cummings stood there but had his head down, which made it difficult to get a clear picture. Officer Webster told Cummings to hold his head up and Cummings did not do so. Without any further provocation, Webster hit Cummings four times with his fists in the rib cage. Officer Adkins then choked Cummings and Cummings dropped to the floor unconscious. The two officers then threw Cummings up against the wall, scattering plaster over the room. The two officers then dragged Cummings by his arms from the photo room to the psychiatric cell and attempted to prop him up against the wall. The jailer testified that he left the cell for about 30 seconds to get Cummings' T-shirt and when he returned, blood was gushing out of Cummings' nose; Webster was leaning over the upper portion of Cummings' body; and Adkins was telling Webster to "cool it." Two other prisoners in other cells testified that both officers struck Cummings while he was in the psychiatric cell and the civilian jailer and both prisoners testified that Cummings never struggled or exhibited any violence while he was in the jail, nor did he make any noise at all.
The officers' testimony was that Cummings had sworn at them, threatened to kill one of them, and had also struggled with and kicked them. Their testimony was that, although they had struck Cummings, it was to restrain him and protect themselves. Webster testified that, in the cell, Cummings kicked him with both feet and began to get up. In attempting to hit Cummings in the chest to knock the wind out of him, Webster missed and hit him in the nose and face instead.
Shortly after the incidents on the night of May 28, 1978, an investigation of the events surrounding Cummings' arrest was conducted by the Nebraska State Patrol. Based on that investigation, the North Platte chief of police suspended Officers Webster and Adkins from duty, and on June 8, 1978, the chief of police filed a written accusation against each officer with the North Platte Civil Service Commission.
The accusations charged that on May 28, 1978, the officers participated in an assault on Harold G. Cummings in the Lincoln County jail in violation of the civil service rules and regulations and in violation of the statute defining the offense of assault with intent to commit great bodily injury. The accusation charged that such conduct was in direct violation of specified sections of North Platte police department policy and procedures dealing with personal conduct, conduct unbecoming an officer, and the use *414 of force. The officers were each served with copies of the written accusations and each requested a hearing.
In the meantime, criminal charges were filed against the officers charging them with assault and battery. The charge against Officer Webster was tried before a jury in the Lincoln County court and the jury found Webster not guilty. The criminal charge against Officer Adkins was then dismissed.
In the proceeding pending before the civil service commission, the parties stipulated that the commission should decide the pending civil service matter on the basis of the record made in connection with the criminal proceedings in the county court and such other evidence as counsel might agree upon.
On September 29, 1978, following a hearing at which the officers were represented by counsel and testified, the civil service commission found that the charges made against each officer were true, were made in good faith for cause, and were not politically motivated. The commission also found that the suspension of each officer should be affirmed, and he should be permanently discharged as a member of the police force as of June 8, 1978, and entered its order accordingly.
The officers appealed the order of the civil service commission to the District Court. The District Court found that the order of the civil service commission in each case was made in good faith for cause, and that neither the charges nor the findings were in any way influenced by political reasons and it affirmed the order and judgment of the civil service commission. Both officers have appealed to this court and the cases have been consolidated on appeal.
The plaintiffs contend that because of the acquittal of Webster by the county court jury on the criminal charge of assault and battery, the evidence before the civil service commission was insufficient to establish that the discharge was made in good faith for cause. They also contend that the evidence was insufficient to establish that their discharge was not made for political reasons, and that the written accusation by the police chief before the civil service commission did not give them fair and sufficient notice of the charges against them. We disagree.
The civil service act, Neb.Rev.Stat. §§ 19-1801 to 23 (Reissue 1977) and 1824 (Supp. 1979), regulates the hiring, suspension, and discharge of certain employees of the fire and police departments in the cities where it is applicable. It prohibits the suspension or discharge of employees for political or religious reasons, but provides that employees may be suspended or discharged for cause for any of the reasons listed in § 19-1807. Incompetence, inefficiency, dereliction of duty, willful failure to properly conduct oneself, or any willful violation of duly adopted rules and regulations are all reasons for suspension or discharge under that section.
Plaintiffs take the position that, because the county court jury found Webster not guilty of the criminal charge of assault and battery, that finding somehow becomes res judicata before the civil service commission and precludes a finding that the same conduct constituted good cause for discharge. Plaintiffs cite no authority to support that position and we are unable to find any. It is obvious that an acquittal on a criminal charge against an employee does not preclude an employer from terminating the employment for the identical conduct which constituted the basis for the criminal charge.
Plaintiffs argue that the not guilty finding by the jury establishes that the evidence before the civil service commission as to whether the discharge was made for good cause could not have been conclusive. Section 19-1808 requires that the commission's investigation be confined to the determination of the question of whether or not a discharge was made for political or religious reasons, and whether or not it was made in good faith for cause. If, in the estimation of the commission, the evidence that the discharge was not made for political reasons and was made in good faith for cause is conclusive, the commission may affirm *415 the discharge. The word "conclusive" does not deal with a burden of proof nor the weight of the evidence required to establish specific acts or conduct. It relates only to the issue of whether the discharge was made for political or religious reasons or was made in good faith for cause. Whether the word be "conclusive," as used in the statute, or its synonyms "decisive," "determinative," or "definitive," the evidence in this case is more than sufficient to establish that the discharge was in good faith for cause, and was not made for political or religious reasons.
Plaintiffs contend that, because they were officers of the police union, their discharge was not for good cause but was, instead, for political reasons. As the District Court observed:
From the evidence adduced, even if one had a vivid imagination, there would be no logical reason for drawing an inference that the charges and the findings were in any way influenced by political reasons, or in any way were not made in good faith.
The record here is devoid of any evidence to indicate that the actions of either the police chief or of the commission in these cases were in any way influenced by political or religious considerations.
The contention of the plaintiffs that they did not have sufficient notice of the misconduct charged is almost frivolous. If any complaint could be made in that regard it would be that the charge was too specific. The charge of criminal conduct was pure surplusage.
This court has consistently held that if the evidence in the District Court on appeal from an order of the civil service commission is sufficient to show that the order of the commission suspending or discharging an employee was made in good faith for cause, the order of the commission must be affirmed. Sailors v. City of Falls City, 190 Neb. 103, 206 N.W.2d 566 (1978).
The evidence here was more than sufficient to establish that the judgment of the civil service commission of the city of North Platte discharging the plaintiffs was not made for political or religious reasons and was made in good faith for cause.
AFFIRMED.
KRIVOSHA, C. J., participating on briefs.