Rocco MEDIATE, Appellant (Plaintiff),

v.

CITY OF INDIANAPOLIS,
Appellee (Defendant).

No. 2–477A149.

Court of Appeals of Indiana,
Second District.

Aug. 4, 1980.

Rehearing Denied Sept. 9, 1980.

Timothy J. Burns, Owen M. Mullin, Indianapolis, for appellant.

Stephen Goldsmith, City of Indianapolis, Legal Div., William L. Soards, Soards & Carroll, Indianapolis, for appellee.

SULLIVAN, Judge.

This is an appeal from a judgment of the Marion County Superior Court affirming the decision of the Indianapolis Police Merit Board which had discharged police officer Rocco Mediate.

Mediate raises the following issues for our review:

(1) Did the trial court err in refusing to allow Mediate to present additional evidence upon his complaint for review de novo?

(2) Did the trial court err in affirming the Police Merit Board's determination that Mediate had committed an unlawful act without proof of a conviction?

(3) Did the trial court err in failing to find Mediate's discharge violative of due process and equal protection of the law?

(4) Was there sufficient evidence to sustain the findings of the Police Merit Board?

## I.

Mediate contends that he was denied his statutory right to a "review de novo" when the trial court refused to consider new and additional evidence apart from that contained in the transcript of the hearing before the Police Merit Board. Mediate cites for support certain language in I.C. 18–4–12–27 (Burns Code Ed. 1974), which purports to provide, upon review of the merit board's decision, for a trial "de novo" and, in certain instances, the use of a jury.

Although it has been held by both appellate courts of this state that such statutory language does not contemplate the relitigation of the factual issues decided by the administrative body, *City of Indianapolis v. Ingram* (2d Dist. 1978) Ind.App., 377 N.E.2d 877; *City of Gary v. Gause* (3d Dist. 1974) 162 Ind.App. 97, 317 N.E.2d 887; *See Uhlir v. Ritz* (1970) 255 Ind. 342, 264 N.E.2d 312, we need not decide that issue here.[1] Mediate's hearing before the Police Merit Board was held on May 7, 1975. I.C. 18–4–12–27 was amended, effective May 5, 1975, to delete the "de novo" language.[2] The pertinent portion of that statute, as amended, now reads as follows:

"(h) Any aggrieved member of the force shall have the right to file a verified petition in the superior or circuit court of the county for a review of the merit board decision. The petition for review must be filed within thirty [30] days after the written decision of the board. The consolidated city shall be the sole defendant in the petition for review. Within thirty [30] days after receipt of summons, the consolidated city shall cause the merit board to file a true and complete copy of the transcript of the hearing with the court. The court, without jury, shall review the record and render its decision as in other administrative reviews. The clerk of the court shall send a copy of the court's decision to the department of pub-

---

1. The treatment of this statutory language by the Indiana courts has been the subject of perceptive criticism. *See* Marsh, *Administrative Law, 1975 Survey of Recent Developments In Indiana Law*, 9 Ind.L.Rev. 14 (1975); Note, *Judicial Review of Removals of Municipal Policemen and Firemen In Indiana*, 26 Ind.L.J. 397 (1951).

2. Acts 1975, P.L. 182, § 6, p. 984.

lic safety and the appealing officer. Either party may appeal the decision of the court."

■ Mediate argues that I.C. 18–4–12–27 should not have been applied to him in its amended form for two reasons. First, he notes that parallel language in I.C. 18–1–11–3 (Burns Code Ed. 1974), the statutory counterpart of I.C. 18–4–12–27 for non-first class cities, does not include in its amended form the deletion of the "de novo" language. He suggests that the legislative intent could not have been to create such a disparity in standards for first class and non-first class cities.[3] We, however, are not at liberty to speculate as to the reasons for the variance absent a showing of patent oversight or illogical result.

■ Secondly, Mediate argues that the application of the amended statute to him constitutes the imposition of an *ex post facto* law. Such argument is without merit. The hearing before the Police Merit Board was held two days after the amendment became effective. Further, it has been established that the *ex post facto* prohibition applies only where a substantive right is taken away, not where there is merely a change in procedure, *Watts v. State* (1950) 229 Ind. 80, 95 N.E.2d 570, and that the *ex post facto* prohibition does not apply to laws which change private or civil rights, but only to laws concerning substantive rights subject to deprival in proceedings of a criminal nature. *Warner v. State* (1976) 265 Ind. 262, 354 N.E.2d 178.

■ Mediate has not indicated the nature of the evidence he attempted to introduce nor how he has been prejudiced by its absence. Thus, we need not determine whether the non-recognition of the "de novo" review precludes the introduction of evidence concerning the validity or legality of the decision-making process itself, as opposed to the substantive issues before the administrative body. Where evidence

sought to be submitted concerns the very process by which the administrative board rendered its findings and decision, a refusal to consider such evidence by the trial court upon review of that decision may constitute a denial of due process. *Compare Anderson Federal Savings & Loan v. Guardianship of Davidson* (2d Dist. 1977) Ind.App., 364 N.E.2d 781. Such question is not before us here.

## II.

Mediate contends that his dismissal based upon the Police Merit Board's determination that he had violated a criminal statute invaded the exclusive province of the criminal courts.

■ Mediate confuses the function of the Police Merit Board. That body is charged with the duty of disciplining police officers, not with the dispensation of criminal punishment. The administrative decision-making process contemplates a different standard of proof with different consequences. In *State v. Carey* (1961) 241 Ind. 692, 175 N.E.2d 354, the disassociation of the two functions was recognized. There the converse situation was presented when the respondent argued that the civil remedy for discharge from the police force should bar criminal prosecution for the same unlawful conduct. The court disagreed, stating:

"The 'legislative intention,' which appellee asserts, is not expressed in nor can it be inferred from the statute; nor are we aware of any general public policy that a municipal officer should be immune from criminal prosecution for his willful and unlawful misconduct in his official capacity, even though as an employee of the city his continued status as an employee is, by statute, made subject to the exclusive determination of an administrative board subject to appeal." 175 N.E.2d at 356.

---

3. Mediate does not question, but in fact correctly asserts, that I.C. 18–4–12–27 is the applicable statute setting forth the procedures for disciplining police officers employed by the City of Indianapolis. For some reason, the

court in *City of Indianapolis v. Ingram, supra,* 377 N.E.2d 877, summarily assumed that I.C. 18–1–11–3 was the applicable statute in reviewing the discipline imposed upon an Indianapolis police officer.

Likewise, an administrative determination that a criminal act has been committed does not depend upon a criminal conviction for that act. As stated in *Lee Moor Contracting Co. v. Hardwicke* (1940) 56 Ariz. 149, 106 P.2d 332, 335, concerning the administrative revocation of a license:

"The first question which arises is procedural, and is whether the registrar had jurisdiction to consider the revocation of defendant's license before the latter was convicted of a misdemeanor for violation of Art. 1, supra, in a proper court. In this behalf, it is urged that we have held in the case of *State ex rel. Wilson v. Baird*, 36 Ariz. 531, 288 P. 1, that such a conviction is a prerequisite to any further proceedings for violation of the statute. In the case cited the question was whether the councilmen of a certain town should be removed from office. The statute involved in that case provided that if any councilman did a certain thing he 'shall be deemed guilty of a misdemeanor and upon conviction thereof * * * shall be fined * * * and he shall also cease to be * * * [a] councilman * * of such town.' Par. 1889, Civil Code 1913. In that case we held that the conviction was a condition precedent to the removal of the councilman, but the statute in the present case is very different in its language. While it is true that a violation of Art. 1, supra, is punishable as a misdemeanor, chapter 104, supra, which provides for the licensing of contractors, and the revocation of such license, nowhere makes conviction of the violation of such article a condition precedent to the suspension of a license. It expressly states that upon the filing with the registrar of a complaint charging any act which is cause for the revocation of a license, the registrar shall proceed to hear the matter in a certain manner, without any reference whatever to a conviction under the article. *We think the fact that no criminal conviction of defendant had been had for a violation of the law in question did not bar the registrar from determining in an independent proceeding whether its license should be revoked for that reason.*" (Emphasis supplied.)

*See also City of Miami v. Kellum* (Fla.App. 1962) 147 So.2d 147.

Conclusive of this principle's vitality under Indiana law is its application to the determination that a probationer has committed a criminal act in violation of a condition of his probation. Our Supreme Court has held that, because such revocation proceedings are civil in nature, the determination that a criminal act was committed need not be preceded by a conviction for that act. *See Hoffa v. State* (1977) 267 Ind. 133, 368 N.E.2d 250. The Police Merit Board's determination did not invade the province of the criminal courts.

### III.

Mediate was discharged pursuant to Indianapolis Police Department Rule 1:00, which provides:

"All officers must obey all:

a. Federal, state and local laws

b. Proper and lawful orders of their superior officers in the department, whether they be oral or written

c. Rules and regulations of the department.

Indictment, arrest or failure to obey shall subject an officer to disciplinary procedure."

Mediate contends that such rule is unconstitutionally vague, both facially and as applied, due to its failure to sufficiently apprise of that conduct which is proscribed. We, however, fail to perceive how such a regulation could be clearer in its warning that an arrest, indictment or determination of disobedience of the law or an order of a superior would subject the officer to discipline. The rule is not unconstitutionally vague.

### IV.

The record reveals that a surveillance team, consisting of J. C. Penney employees, officers of the Marion County Sheriff's Department and a deputy prosecutor, observed Mediate, in the early morning

hours of March 29, with a sack and a box walking near a shopping mall and approaching the rear of Mediate's car. The officers in the surveillance team orally made their presence known, whereupon Mediate threw the containers into the trunk of the car and slammed the lid. Confiscation of the containers revealed that the sack carried the inscription "J. C. Penney" on the side, and both containers held clothing bearing J. C. Penney price tags. Mediate was thereupon arrested.

Such evidence sufficiently supports the Police Merit Board's determination that Mediate had committed a criminal act, in violation of police regulations.

The judgment is affirmed.

BUCHANAN, C. J., and SHIELDS, J., concur.