In the Matter of the RECOMMENDA-
TION FOR DISCHARGE OF
John D. KELVIE.

No. C6–85–2158.

Court of Appeals of Minnesota.

April 8, 1986.

Robert J. Alfton, Minneapolis City Atty., Steven R. Fredrickson, Asst. City Atty., Minneapolis, for Kelvie.

William R. Skolnick, Meshbesher, Singer & Spence, Minneapolis, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

Thomas Dickinson, individually and in his capacity as Chief Engineer of the Minneapolis Fire Department, appeals from a determination by the Minneapolis Civil Service Commission that just cause did not exist to discharge John Kelvie, a Minneapolis firefighter. We affirm.

## FACTS

John Kelvie began working as a firefighter for the Minneapolis Fire Department in 1979. As one of the conditions of his employment, Kelvie signed an oath stating that he would support the laws of the State of Minnesota and the ordinances of the City of Minneapolis.

In December 1984 the Minneapolis police executed a search warrant at Kelvie's home. In an upstairs bedroom, which Kelvie shared with Veronica Bates, the officers found marijuana, a triple-beam scale, a cube of Mannitol (a laxative used to cut other drugs), seven Valium tablets, a brown mirror with powder-like traces on it, white ephedrine tablets (a non-controlled substance), and eight syringes. They found $1,900 in cash in the bedroom and in a hallway outside the bedroom. A bag containing marijuana was found in Bates' purse, and another was found in the living room. The police confiscated a total of 15½ grams (about ½ oz.) of marijuana. In addition, they seized an address book, a switchblade, razor blades, two pipe devices, a letter addressed to Kelvie, Zig-Zag rolling papers, and a plastic bag containing cotton swabs.

When Kelvie admitted that he occupied the bedroom where the marijuana was found, he was arrested and charged with three misdemeanor counts of possession of marijuana, injection equipment, and drugs not in an original container.

Kelvie's arrest was brought to the attention of Minneapolis Fire Chief Thomas Dickinson, who immediately suspended Kelvie without pay pending an investigation. On January 9, 1985, Chief Dickinson conducted a fact-finding hearing to determine whether disciplinary action should be taken against Kelvie. During this hearing, Kelvie was questioned about the criminal charges, his alleged drug use and/or possession, and whether he had sold any drugs to other firefighters. Upon the advice of his attorney, Kelvie invoked his fifth amendment privilege against self-incrimination and refused to answer without a grant of immunity, despite Chief Dickinson's assurances that his statements would not be used against him in subsequent criminal proceedings.

Chief Dickinson then recommended to the Minneapolis Civil Service Commission that Kelvie be discharged. A notification of discharge was mailed to Kelvie, listing several reasons for his dismissal. Kelvie appealed to the Civil Service Commission, and a hearing was held before an administrative law judge. At the hearing, and again upon the advice of counsel, Kelvie refused on fifth amendment grounds to answer any questions concerning the criminal charges.

The administrative law judge specifically found that on December 5, 1984, Kelvie possessed marijuana, marijuana smoking paraphernalia, syringes, and a triple-beam scale; Bates was found to possess marijuana, the other drugs, and the rest of the drug paraphernalia.[1] The administrative law judge also found:

7. In late 1984, Veronica Bates had a "drug problem" which John Kelvie tried to discourage. Mr. Kelvie has flushed her drugs down the toilet and in January of 1985, kicked Ms. Bates out of the house because of the problem. At the time the search warrant was executed, the police officers found needle "tracks" on Veronica Bates' arms.

13. While on duty, John Kelvie has satisfactorily performed all aspects of his assigned duties as a firefighter. There is nothing in the record to suggest that Mr. Kelvie has ever used drugs while on duty or that he has come to work in an "intoxicated" state. Chief Dickinson is

1. After the administrative hearing, Kelvie was acquitted of all criminal charges.

aware that at least one firefighter (not John Kelvie) smokes marijuana in his off-duty hours. No disciplinary action has been taken against that individual. 14. Firefighters can be called in to work at any time. However, there is no obligation to report if the firefighter determines that he is unable to perform his duties.

In the memorandum accompanying the order, the administrative law judge said the main reason Kelvie was discharged was because he invoked his fifth amendment privilege in response to Chief Dickinson's questioning. The administrative law judge concluded that the Minneapolis Fire Department had failed to prove sufficient cause for Kelvie's discharge. The Civil Service Commission adopted the administrative law judge's recommended findings and conclusions.

### ISSUES

1. Is the Commission's decision to reinstate Kelvie supported by substantial evidence in the record?

2. Did Kelvie properly assert his fifth amendment privilege against self-incrimination?

### ANALYSIS

### I

The list of reasons for Kelvie's discharge included allegations that he violated his oath of office and several sections of the Minneapolis Civil Service Commission rules by possessing marijuana and drug paraphernalia. Concerning allegations that Kelvie had violated his oath of office, the Commission noted:

Paragraphs 16 and 17 of the charges allege breaches of Commission Rules because John Kelvie violated his oath of office by committing crimes in violation of state laws and city ordinances. At the time of Kelvie's discharge and the time of the hearing on this matter, Mr. Kelvie had not been convicted of any criminal offenses. Those charges have not been proved.

The Fire Department argues that because the burden of proof in an administrative hearing is the preponderance-of-the-evidence standard, a criminal conviction, which requires proof beyond a reasonable doubt, need not be first established.

Kelvie and the Commission concede that a criminal conviction is not necessary to establish just cause for discharge. The issue presented is whether Kelvie's possession of marijuana and drug paraphernalia constituted sufficient cause for his removal.

The administrative law judge extensively addressed the question of whether Kelvie violated Rule 12.02 of the Minneapolis Civil Service Commission rules, which provides:

The following shall be sufficient cause for removal or discharge:

(a) That the employee is incompetent or inefficient in the performance of the duties of his position; or

\*    \*    \*    \*    \*    \*

(i) Has performed acts of insubordination or disgraceful conduct, whether such acts were committed while on duty or off duty;

\*    \*    \*    \*    \*    \*

(q) other justifiable causes, provided that the facts substantiating such conclusions are included in the charges.

The administrative law judge (and, in turn, the Commission) found that Kelvie's possession of the drugs and drug-related equipment did not constitute insubordination, disgraceful conduct, or other justifiable cause for discharge as required by the above rules. The judge relied heavily on the fact that the department proved only Kelvie's possession, rather than use, of drugs and that there was no relationship between Kelvie's possession of marijuana and his job performance.

The Fire Department also argues that Kelvie violated his oath of office and that violation of the oath of office should be considered a separate ground for his dismissal. Neither Kelvie nor the Commission dispute this contention. However, the charges brought against Kelvie allege only that he violated his oath of office by violating Civil Service Rules 12.02(i) and (q), *su-*

*pra.* Therefore, whether it is the fact of possession or the violation of the oath of office which is considered, each must constitute "sufficient cause" to uphold Kelvie's discharge.

In *State ex rel. Hart, et al. v. Common Council of City of Duluth*, 53 Minn. 238, 55 N.W. 118 (1893), our supreme court first defined the meaning of "cause" in the context of an officer's removal from office:

> "Cause," or "sufficient cause," means "legal cause," and not any cause which the council may think sufficient. *The cause must be one which specifically relates to and affects the administration of the office*, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. *The cause must be one touching the qualifications of the officer or his performance of its duties*, showing that he is not a fit or proper person to hold the office. An attempt to remove an officer for any cause not affecting his competency or fitness would be an excess of power, and equivalent to an arbitrary removal. In the absence of any statutory specification the sufficiency of the cause should be determined with reference to the character of the office, and the qualifications necessary to fill it.

*Id.* at 244, 55 N.W. at 120 (emphasis supplied). In *Hagen v. State Civil Service Board*, 282 Minn. 296, 164 N.W.2d 629 (1969), the court explained further:

> Under this definition it appears that the cause or reason for dismissal must relate to the manner in which the employee performs his duties, and the evidence showing the existence of reasons for dismissal must be substantial.

*Id.* at 299, 164 N.W.2d at 632.[2]

In *Nodes v. City of Hastings*, 284 Minn. 552, 170 N.W.2d 92 (1969), a police officer was discharged for habitually neglecting to pay his debts, in violation of police department rules and regulations. The supreme court upheld the discharge, reasoning that the officer's failure to pay his debts "impair[ed] his usefulness as one charged with enforcement of the law." *Id.* at 553, 170 N.W.2d at 94. The court explained that the officer's "reputation for not paying his bills was so notorious as to destroy his usefulness as a member of the police force." *Id.* The present case is distinguishable because there was no finding that Kelvie had a reputation for smoking marijuana. The Commission found only that he possessed a small quantity and in addition that there was no relationship between the charges against him and his job performance.[3]

■■■■ Whether the Commission had just cause to discharge Kelvie is a question of fact. *Hagen*, 282 Minn. at 300, 164 N.W.2d at 632. The Commission's findings that Kelvie's action did not affect his job performance and therefore did not constitute just cause for dismissal are supported by substantial evidence in the record. We do not intend, by this decision, to preclude any other forms of discipline which might be allowable under the Minneapolis Civil Service Commission Rules.

## II

The Fire Department also argues that Kelvie improperly asserted his privilege against self-incrimination at the meeting with the fire chief and at the hearing be-

---

**2.** *Hart* and *Hagen* involved violations of department rules, rather than oaths of office. However, at least one jurisdiction has held that in order to discharge a public employee for violation of an oath of office, there must be a connection between the actions and the oath. In *De Paulo v. City of Albany*, 49 N.Y.2d 994, 429 N.Y.S.2d 171, 406 N.E.2d 1064 (1980), a police officer was accused of acts violative of his oath of office, consisting of filing a false report and disorderly conduct. (The oath was not quoted by the court, although we presume that it re-ferred to upholding New York's laws). The *De Paulo* court found that the officer's actions were not remotely connected with his oath of office.

**3.** Appellants cite *Turck v. St. Cloud Civil Service Board*, 268 N.W.2d 899 (Minn.1978), arguing that public employees may be disciplined for off-duty misconduct. However, *Turck* held only that employment-related charges constituted just cause for an employee's discharge.

fore the administrative law judge, because Chief Dickinson promised him that his testimony would not be used against him in any criminal proceeding.

In *Spevak v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), the Supreme Court decided that an attorney could not be disbarred for refusing to testify at a judicial inquiry upon fifth-amendment grounds, noting that the proscribed "penalty" for silence is not limited to fines or imprisonment, but can be "any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Id.* at 515, 87 S.Ct. at 628. *See also State v. Gensmer,* 235 Minn. 72, 77, 51 N.W.2d 680, 684 (1952) (the "[fifth amendment] constitutional privilege extends with full force to an investigation by an administrative officer"); *State v. Nolan,* 231 Minn. 522, 525, 44 N.W.2d 66, 69 (1950) (persons under investigation by a public examiner "could not be compelled by any court or administrative agency to incriminate themselves in regard thereto, or to testify").

In *Garrity v. State of New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), police officers who were being investigated were told that if they refused to answer questions, they would be subject to removal from office. Although no immunity was granted, the officers answered the questions. The Supreme Court found that their statements were coerced and therefore could not be used against them in subsequent criminal proceedings.

*Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), considered the question of whether a police officer could be discharged for asserting his fifth amendment rights and refusing to sign a waiver of immunity from prosecution during a grand jury investigation. The *Gardner* court determined that the officer's answers could have been compelled if he had been granted immunity and that the waiver was required because his testimony was demanded, in part, to incriminate him. The *Gardner* court set forth the following rule:

> If appellant * * * had refused to answer questions specifically, directly, and nar-

rowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself, the privilege against self-incrimination would not have been a bar to his dismissal.

> \*    \*    \*    \*    \*    \*

> He was discharged from office, not for failure to answer relevant questions about his official duties, but for refusal to waive a constitutional right. He was dismissed for failure to relinquish the protections of the privilege against self-incrimination. * * * He was dismissed solely for his refusal to waive the immunity to which he is entitled if he is required to testify despite his constitutional privileges.

*Id.* at 278, 88 S.Ct. at 1916. The *Gardner* language indicates that if a public employee is compelled to waive his fifth amendment rights, he must be granted immunity. *Gardner* also indicates that, absent a grant of immunity, the employee can be discharged only for refusing to answer questions directly and narrowly related to the performance of the employee's official duties. *Accord Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation,* 392 U.S. 280, 284, 88 S.Ct. 1917, 1919, 20 L.Ed.2d 1089 (1968).

In *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977), and *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), the Court also indicated that if potentially incriminating answers are required of public employees, a state must offer whatever immunity is required to supplant the fifth amendment privilege ("use immunity") and cannot insist upon waiver of that immunity.

■ The administrative law judge found that "the main reason John Kelvie was discharged was because of his failure to respond to the questioning of Chief Dickinson * * * on Fifth Amendment grounds." He further found:

> The record in this matter shows that the scope of questioning conducted by Chief Dickinson was very broad; it concerned

off-duty activities, the circumstances of the criminal charges, and illegal conduct as well as potential effects on job performance. Essentially, the Chief was investigating the criminal charges themselves rather than asking only duty-related questions. * * *

* * * Chief Dickinson had no independent legal authority to grant any kind of immunity to John Kelvie. If Mr. Kelvie had made incriminating statements not covered by *Garrity,* he would have had to rely on Chief Dickinson's assertion that nothing he said would be used against him. That determination, however, would have to be made by the trial court in the criminal proceeding.

These findings are supported by the record. The parties have cited no statute that would give either the fire chief or the administrative law judge authority to grant Kelvie immunity. In light of the above cases, therefore, we find that such authority did not exist and that Kelvie could not be compelled to answer questions which might have tended to incriminate him.

■■■ Finally, the Fire Department argues that the Commission improperly declined to draw adverse inferences from Kelvie's failure to testify. Drawing adverse inferences from Kelvie's refusal to testify in a civil matter is permitted but not mandatory. The administrative law judge's reasons for declining to draw adverse inferences were not arbitrary or unreasonable.

### DECISION

The Civil Service Commission's finding that the Minneapolis Fire Department did not have sufficient cause to discharge Kelvie from his duties as a firefighter is supported by substantial evidence. Kelvie properly asserted his fifth amendment privilege against self-incrimination at fact-finding and administrative hearings.

Affirmed.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent for the following reasons:

1. When a firefighter is hired by the City of Minneapolis, he is required to sign an oath to uphold the laws of this State and the ordinances of the City of Minneapolis.

Kelvie was charged as follows:

16. On December 5, 1984, at 2912—15th Avenue South, Minneapolis, Minnesota, the employee violated his oath of office to support the laws of the State of Minnesota and the Ordinances of the City of Minneapolis by violating Minnesota Statutes §§ 152.09, subd. 1(2) and 152.092, and Minneapolis Code of Ordinances §§ 223.10, 223.70, 223.120, and 223.230, each being a violation of Civil Service Commission Rule 12.02(i).

17. On December 5, 1984, at 2912—15th Avenue South, Minneapolis, Minnesota, the employee violated his oath of office to support the laws of the State of Minnesota and the Ordinances of the City of Minneapolis by violating Minnesota Statutes §§ 152.09, subd. 1(2) and 152.092, and Minneapolis Code of Ordinances §§ 223.10, 223.70, 223.120, and 223.230, each being a violation of Civil Service Commission Rule 12.02(q).

The Commissioners adopted the opinion of the administrative law judge, which held:

Paragraphs 16 and 17 of the charges allege breaches of Commission Rules because John Kelvie violated his oath of office by committing crimes in violation of state laws and city ordinances. At the time of Kelvie's discharge and the time of the hearing on this matter, Mr. Kelvie had not been convicted of any criminal offenses. Those charges have not been proved.

Proof of a criminal conviction is not required. The departmental charges allege John Kelvie violated certain statutes and ordinances, not that he was convicted of those violations. An administrative discharge does not depend upon a criminal conviction. *Mediate v. City of Indianapolis,* 407 N.E.2d 1194, 1197 (Ind.App.1980).

It is not necessary for an administrative body to wait for the outcome of other criminal proceedings before dismissing an employee. *McNeal v. Civil Service Commission,* 237 Ark. 301, 302, 372 S.W.2d 614,

615 (1963); *State ex rel. Ashbaugh v. Bahr,* 68 Ohio App. 308, 311, 40 N.E.2d 677, 679 (1941). A civil service commission has authority independent of the criminal courts. *Fleming v. Holland,* 260 S.W.2d 840, 842 (Mo.Ct.App.1953).

2. Even when an employee has been acquitted of the criminal charge, he may be discharged. In *Adkins v. North Platte Civil Service Commission,* 206 Neb. 500, 504–05, 293 N.W.2d 411, 414 (1980), the court held acquittal of a city police officer on an assault charge did not preclude the city's civil service commission from terminating him for the conduct constituting the basis for the charge. *Accord Guadette v. Board of Public Safety,* 20 Conn.Supp. 147, 150, 127 A.2d 836, 838 (1956); *Roberson v. City of Rome,* 72 Ga.App. 55, 60, 33 S.E.2d 33, 36–37 (1945); *Purdie v. Detroit Police Department Trial Board,* 318 Mich. 430, 435, 28 N.W.2d 283, 285 (1947); *In re Schuppe,* 1 A.D.2d 912, 913, 149 N.Y.S.2d 535, 537 (1956). A city may rely on the same conduct which was the basis of criminal accusations to support charges against the officer, although he was acquitted of the criminal offenses. *Howle v. Personnel Board of Appeals,* 122 Ga.App. 276, 277, 176 S.E.2d 663, 664 (1970).

The standard of proof in a criminal case is proof beyond a reasonable doubt. An administrative discharge hearing merely requires a mere preponderance of the evidence. The administrative law judge specifically found John Kelvie possessed marijuana, marijuana smoking paraphernalia, syringes and a triple beam scale. It is undisputed such possession constituted a violation of the Minneapolis City Ordinances and the laws of Minnesota.

3. In administering Kelvie the oath requiring him to uphold its laws, the City of Minneapolis was not simply expressing vague ideals. It set a standard which Kelvie was expected to meet. Finding the violation of the oath was not justifiable cause for dismissal reduces the administration of the oath to a meaningless formality. I would conclude that was not the intent of the City.

4. In *State ex rel. Hart v. Common Council,* 53 Minn. 238, 55 N.W. 118, the supreme court defined sufficient "cause" for an officer's dismissal as "one which specifically relates to and affects the administration of the office * * * showing that he is not a fit or proper person to hold the office." *Id.* at 244, 55 N.W. at 120. The City of Minneapolis has determined that persons chosen to fill the office of firefighter must swear to uphold the laws of the City and State. By requiring the oath by Kelvie, the City indicated its belief that upholding its laws is directly related to holding the office of firefighter, and only those persons who swear to do so are fit and proper persons to serve as firefighters.

5. The majority cites *Nodes v. City of Hastings,* 284 Minn. 552, 170 N.W.2d 92 (1969), where the supreme court upheld the discharge of an officer who had a reputation for habitually neglecting to pay his debts. Although the majority distinguishes *Kelvie* from *Nodes* on the basis Kelvie does not have a reputation for smoking marijuana, I believe an officer's possession of marijuana and drug paraphernalia is more serious than failure to pay bills.

6. Firefighters serve the citizens of Minneapolis and are respected by its citizens. Requiring its firefighters to uphold the laws of the City and State is not an unreasonable demand by the City of Minneapolis. We have consistently held in unemployment compensation cases that violation of an employer's reasonable work rules or requests is justification for dismissal and denial of unemployment benefits. *See, e.g., Jones v. Rosemount, Inc.,* 361 N.W.2d 118, 120 (Minn.Ct.App.1985). That reasoning supports finding Kelvie violated his oath of office, which constituted just cause for dismissal.