Timothy M. LEININGER, Appellant,

v.

CITY OF BLOOMINGTON et al., Respondents.

No. 50326.

Supreme Court of Minnesota.

Sept. 5, 1980.

Stuart E. Gale, Bloomington, for appellant.

Gary Gandrud, City Atty., Bloomington, for respondents.

Heard before SHERAN, C. J., and YETKA, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Timothy Leininger appeals the judgment of the Hennepin County District Court affirming the decision of the Bloomington Merit Board,[1] which upheld the action of the City of Bloomington (hereinafter "City") demoting Leininger from the rank of sergeant in the Bloomington Police Department (hereinafter "Department") to the rank of police officer. He raises the following issues: (1) whether the Merit Board applied the correct legal standard in arriving at its decision; (2) whether the decision of the Merit Board is reasonably supported by the evidence; (3) whether the Merit Board is empowered to modify the City's proposed discipline; (4) whether Leininger's demotion violated his First Amendment rights; (5) whether alleged improprieties by the City denied Leininger his due process right to a fair hearing; (6)

---

1. The Merit Board is a body of three citizens of Bloomington appointed to the City Council who serve without compensation but are reimbursed for expenses. The Board makes rules and regulations regarding personnel matters and hears appeals of dismissed, suspended, or demoted employees.

whether the City denied Leininger due process when it failed to implement its Employee Assistance Program before proceeding with disciplinary action; and (7) whether Leininger is entitled to receive pay for the period from July 6, 1977, when the City notified him in writing of its intent to demote him, to December 13, 1978, when the Merit Board rendered its opinion. We affirm in part and reverse in part.

Timothy Leininger had served as a police officer and sergeant in the Bloomington Police Department for 12 years at the time this disciplinary action was begun. There was no evidence that prior to his promotion to the rank of sergeant in November of 1974 he was not a highly regarded officer of the patrol division. His performance apparently warranted a promotion to the rank of sergeant. There is some indication that in his supervisory position he disagreed with some of the policies of the police department and, in fact, criticized the department in a quarterly traffic law enforcement report in the spring of 1976. He was thereafter transferred to the juvenile division of the police department in June 1976, although there was then no need for additional officers in that division. At the same time, Sergeant Ronald Swanson, who had also been critical of certain departmental policies, was similarly transferred to the juvenile division without having requested such a transfer. Although Leininger and Swanson felt the transfers were punishment for their criticism of the Department, Captain Anderson testified that the transfers occurred because of departmental reorganization which reduced the number of platoons from six to four. Two platoon sergeants had to be transferred, and it was the opinion of the watch commanders that Leininger and Swanson should be transferred because they were least effective "on the street."

Leininger was not happy in the juvenile division. He had little to do and was unsure what his duties were because there was no written manual of procedures and rules to follow. He and Sergeant Swanson shared a small office, which had no windows, one desk, one chair, and one phone for the two of them. Lieutenant Zuehlsdorff, who had participated in the decision to transfer Leininger, told Leininger in March or April of 1977 that he did not fit into the Department because he wanted an ideal organization and that was impossible. Zuehlsdorff accused Leininger of not doing his job, and when Leininger asked for documentation, Zuehlsdorff told him he would obtain some. Close surveillance of Leininger's conduct followed from the end of March through early May 1977. As a result of this surveillance, Leininger was charged with seven departmental rules violations: (1) arriving at work 30 minutes late and leaving work approximately one hour early on March 24 and March 25, 1977; (2) inefficient use of time and a city vehicle in transporting juveniles on March 29, 1977; (3) submitting as completed an unacceptable investigative report in April, 1977, and failing to obey an order to investigate further; (4) patrolling areas without a sufficient reason on April 29, 1977; (5) submitting false time cards on April 4 and April 29, 1977; (6) conducting personal business on duty time on March 30, March 31, April 1, and April 28, 1977; and (7) misleading the watch commander and making misrepresentations to a supervisor on September 18, 1976, in order to obtain time off.

On May 1, 1977, Leininger went on sick leave, suffering from what the City's doctors diagnosed as a situational stress reaction caused by the intense surveillance. On June 6, 1977, the City informed Leininger by letter of its intent to demote him to the rank of police officer on the basis of the allegations of misconduct mentioned above. Leininger requested a hearing before the Bloomington Merit Board pursuant to the Minnesota Veterans Preference Act, Minn. Stat. § 197.46 (1978).[2] The Board heard

2. Minn.Stat. § 197.46 (1978) provides, in relevant part:
No person holding a position by appointment or employment in the several counties, cities, towns, school districts and all other political subdivisions in the state, who is a veteran separated from the military service under honorable conditions, shall be removed from such posi-

evidence between August 16, 1977, and December 13, 1978, when it rendered an opinion affirming the City's action. Leininger appealed the Board's decision to Hennepin County District Court, and on May 15, 1979, that court remanded the case to the Board for clarification of the legal standard adopted by the Board and to gather more evidence relating to Leininger's claim for compensation during the time the disciplinary proceedings were in progress. The Board, by letter, informed the court that it had made an independent determination of the facts and had unanimously sustained the demotion. The Board did not reopen the hearing to determine Leininger's claim for pay as ordered by the District Court. The District Court affirmed the Merit Board's actions. This appeal followed.

1. Leininger's first argument is that the Merit Board applied the wrong legal standard to the case because it erroneously based its decision upon a showing of "reasonable cause" rather than "just cause," as required by statute.

An employee who is a veteran cannot be dismissed or demoted except for "incompetency or misconduct." Minn.Stat. 197.46 (1978). Minnesota Statutes § 44.08, subd. 1 (1978), provides that no city employee may be dismissed or suspended except for "just cause." This court has held that there is no significant difference between the "misconduct" required by Minn.Stat. § 197.46 and the "just cause" required by Minn.Stat. § 44.08, subd. 1. *Ekstedt v. Village of New Hope,* 292 Minn. 152, 193 N.W.2d 821 (1972). In *Ekstedt* we adopted the following standard, 292 Minn. at 162–63, 193 N.W.2d at 826, *quoting respectively, State ex rel. Hart*

*v. Common Council,* 53 Minn. 238, 244, 55 N.W. 118, 120 (1893), and *Hagen v. State Civil Serv. Bd.,* 282 Minn. 296, 299, 164 N.W.2d 629, 632 (1969).

" 'Cause,' or 'sufficient cause,' means 'legal cause,' and not any cause which the council may think sufficient. The cause must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of its duties, showing that he is not a fit or proper person to hold the office. An attempt to remove an officer for any cause not affecting his competency or fitness would be an excess of power, and equivalent to an arbitrary removal. In the absence of any statutory specification the sufficiency of the cause should be determined with reference to the character of the office, and the qualifications necessary to fill it."

\* \* \* \* \* \*

"Under this definition it appears that the cause or reason for dismissal must relate to the manner in which the employee performs his duties, and the evidence showing the existence of reasons for dismissal must be substantial."

There is no evidence that the Merit Board did not follow the "just cause" or "misconduct" standard required by Minn. Stat. §§ 44.08, subd. 1, and 197.46. The Board explicitly found that the demotion was justified "for reasons of incompetence and misconduct." In its letter to the Dis-

tion or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing.

Any veteran who has been notified of the intent to discharge him from an appointed position or employment pursuant to this section shall be notified in writing of such intent to discharge and of his right to request a hearing within 60 days of receipt of the notice of intent to discharge. The failure of a veteran to request a hearing within the provided 60–day period shall constitute a waiver of his right to a hearing. Such failure shall also waive all other available legal remedies for reinstatement.

Request for a hearing concerning such a discharge shall be made in writing and submitted by mail or personal service to the employment office of the concerned employer or other appropriate office or person.

In all governmental subdivisions having an established civil service board or commission, or merit system authority, such hearing for removal or discharge shall be held before such civil service board or commission or merit system authority.

trict Court, the Board clarified the standard by stating:

> The Board concluded that the City had established by substantial evidence that Sergeant Leininger was incompetent and had, in the course of his duties as sergeant, committed misconduct. We interpreted incompetence and misconduct to include: (1) improper discharge of duties or failure to perform required duties which rendered the person unfit to retain his/her position, and (2) failure to adhere to significant departmental rules and regulations which rendered the person unfit to perform the required duties of his/her position.

We conclude that the Merit Board did apply the correct legal standard in arriving at its decision.

2. Leininger contends that the decision of the Merit Board is not reasonably supported by the evidence. In *State ex rel. Jenson v. Civil Serv. Comm'n,* 268 Minn. 536, 538, 130 N.W.2d 143, 146 (1964), *cert. denied,* 380 U.S. 943, 85 S.Ct. 1023, 13 L.Ed.2d 962 (1965), we described this court's standard of review of municipal employee dismissal hearings as follows (footnotes omitted):

> Where proceedings before the administrative agency vested with final authority are instituted upon a notice which reasonably details the facts claimed to constitute misconduct so that the employee is given fair opportunity to prepare and defend; where the charges made are of a substantial nature directed at the malfeasance or nonfeasance of duties assigned to the employee and which specially relate to and affect the rights and interests of the public; and where the employee is afforded a fair hearing, the findings upon which a discharge is based are to be accepted by the court unless they are unsupported by substantial evidence on the record considered as a whole.

■ We are convinced that the hearing was fair and that the Board tried to decide impartially whether the charges against Leininger were true. The Board found that several of the charges brought by the City were not sustained by the evidence. Our examination of the record persuades us that the Board's factual findings are supported by substantial evidence. The difficult question is whether those charges sustained by the Board justify the demotion.

The Board found that the City met its burden of proof with respect to the following charges:

1. Leininger left work 30 to 60 minutes early on March 25, 1977, without proper authorization.

2. Leininger conducted personal business on duty time on March 30, March 31, and April 1, 1977. (The Board decided these were minor infractions.)

3. Leininger arranged to transport juveniles to Faribault without prior authorization, although he had been told a dew days before that this was not the City's practice. While the arrangement may have been a wise one, he did not explain all of the facts to his supervisor before making the arrangement.

4. Leininger misled two superior officers on September 18, 1976, in order to obtain time off.

It is our impression from reading the record that Leininger is a bright, able police officer who has strong, idealistic notions about how a police department should be run and has no qualms about explaining to his superiors where they are falling short of the ideal. While there is no evidence that Leininger instructed or incited his men to disobey orders or show disrespect for their superior officers, there is some evidence that his critical attitude toward his supervisors and their policies was clear to the men he supervised. As a result of what Leininger's superiors considered his "bad attitude," he was transferred to a division which he disliked, in which there were apparently few written rules or procedures, and was given there insignificant duties or nothing to do. As his morale declined, his "attitude" got worse, and at the same time, the City began watching him for mistakes.

The Merit Board, while finding sufficient evidence to sustain the demotion, made the

following comments in its findings critical of the City and its policies:

> In the review of the large body of testimony and exhibits presented, it appears on an overall basis that sufficient evidence exists which suggests that the City should avail itself of a more extensive use of the Employee Assistance Program; more properly defined procedures in preserving the integrity of City documents, including such items as time cards; more specifically defined, disseminated, and understood Departmental rules and job descriptions; and better utilization of personnel and office space.

> Further, while investigation of an employee's suspected rules violations would appear to be properly within the scope of police management powers, it also appears in this case that the extent of such investigative procedures in at least one instance was considerably in excess of any perceived need in management's attempt to establish such rules violations.

On the other hand, the record supports the inference that Leininger's admitted disrespect for his superiors caused him to willfully flout what he must have known were department rules, at least occasionally. At some point, behavior which might be tolerated in a police officer becomes unacceptable in a sergeant who is required to supervise others and work closely with other supervisors. While the evidence of misconduct in this case, in light of Sergeant Leininger's long and able service, would not be sufficient to justify a discharge, we find that, because of the Board's findings regarding his misconduct, the fact that supervisors are held to a higher standard of behavior than police officers, and the necessity for management to work together amicably, the evidence justifies Sergeant Leininger's demotion.

3. Leininger maintains that the Merit Board incorrectly determined that it had no authority to modify the City's proposed discipline but was limited to reversing or sustaining the City's decision. He argues further that had the Merit Board realized it had authority to modify Leininger's discipline, it would have fashioned an alternate remedy.

It is unclear from the record whether the Board, had it felt it had authority to fashion a reasonable remedy, would have modified the City's recommendation for demotion. It is clear, however, that although the Board decided that the discipline was "warranted," it also came to the following conclusion:

> The Merit Board further concludes that its only options in this matter were to either sustain or not sustain the proposition that the City had sufficient cause for its proposed action. The Board thus felt not in a position to comment on, or render a decision as to, its feelings regarding the severity of the proposed discipline (demotion), and thus not in a position to modify such proposed discipline.

The hearing was held pursuant to the Veterans Preference Act, specifically § 197.46, so we must turn to that statute in order to determine the scope of the Merit Board's power. Minnesota Statutes § 197.-455 (1978) provides that Minn.Stat. § 43.30 (1978), granting veterans preference in state civil service, shall also govern veterans preference in municipalities. Section 197.455 also provides that "Sections 197.46 to 197.48 shall not apply to state civil service."

Minnesota Statutes § 43.24, subd. 2 (Supp. 1979), governing the removal of state employees, provides that the State Civil Service Board may fashion remedies:

> If the board finds that there exist sufficient grounds for institution of dismissal but extenuating circumstances are brought out in testimony and evidence, it may in its discretion reinstate the employee, with full, partial, or no pay, or it may modify the appointing authority's action by substituting a lesser disciplinary action.

Minnesota Statutes § 44.08, subd. 3, (1978) governs the dismissal of municipal employees and provides that the Board may either sustain the charges, in which case the dismissal or suspension is final unless an appeal is taken, or it may find that the

charges are not sustained, in which case the employee is immediately reinstated or continued in his position. Clearly, the legislature could have specified in § 197.46 one scope of authority or the other. In fact, it said nothing. Section 197.46 merely provides for a veterans preference hearing before an established civil service board or commission or merit system authority, the method of comprising a board if no such established system exists, and then, with no direction for the procedure or authority of the board, provides directly for appeal from the board's decision.

In *City of Minneapolis by Johnson v. Singer*, 253 N.W.2d 150 (1977), we found that although the Minneapolis City Charter did not expressly authorize the fashioning of remedies by the Minneapolis Civil Service Commission, that authority was implied by other provisions of the Minneapolis City Charter. There, as in this case, the charter provided for a full hearing with the commission making findings, then issuing a decision to be enforced by the appointing officer. The Minneapolis City Charter did not contemplate, nor do we find that § 197.46 contemplates, that the commission serve merely as a body which reviews findings by appointing officers or department heads. In *Singer* we found that the fact the commission is not just a reviewing body suggests that its function is not simply to approve or disapprove the recommendations of the department head but to decide for itself what penalty, if any, is justified.

We do not feel that our decision in *Essling v. St. Louis County Civil Serv. Comm'n*, 283 Minn. 425, 168 N.W.2d 663 (1969), dictates a contrary result. In *Essling* we held that the St. Louis County Civil Service Commission did not have authority to promulgate a rule mandating retirement at the age of 65 without specific statutory authority to do so. We noted that where the legislature intends to enforce the age of compulsory retirement, either by statute or express delegation of authority, it may also take away from the civil servant such prerogatives as he might have by reason of veterans preference legislation.

■ Rather than to take away any prerogatives which a civil servant may have by reason of veterans preference, it appears to be the intent of the legislature in enacting § 197.455 to firmly establish those prerogatives. That provision states, "Any provision in a law, charter, ordinance, rule or regulation contrary to the applicable provisions of section 43.30 is void to the extent of such inconsistency." Thus, in this case, the statute prevails over section 6.03, subdivision 3, of the City of Bloomington Home Rule Charter, and Merit Rule 18.4 (1976), which provide that the Merit Board shall either confirm the City's action or reinstate the employee "on such terms and conditions as it sees fit." It is inconceivable that the legislature could have intended that a non-veteran, having a disciplinary hearing before the Bloomington Merit Board pursuant to its code and rules promulgated by authority of statute, should benefit from the Board's authority to fashion a remedy, where a veteran, such as Sergeant Leininger, having a hearing before that Board would be restricted because the Board has authority only to affirm or reverse the City's action. We find, therefore, that Minn.Stat. §§ 43.24, .30, 197.455, and .46, read together, impliedly authorize the Bloomington Merit Board to fashion a remedy other than that determined by the City, if the evidence presents extenuating circumstances. We remand the case to the Bloomington Merit Board so that it may exercise that authority, if such exercise, in its opinion, is warranted.

4. Leininger also argues that his demotion violates his First Amendment right to free speech because the City and the Board took into account the remarks he made which were critical of the Department in the traffic law quarterly report written in 1976.

■ Public employees have the right to free speech, but those rights are not absolute. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The interests of the employee, as a citizen, in commenting on matters of public concern, must be balanced against the inter-

est of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. 391 U.S. at 568, 88 S.Ct. at 1734. This First Amendment freedom is not lost to a public employee merely because he arranges to communicate privately with his employer rather than to speak out publicly. *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

■ Although Leininger's critical comments in the traffic law quarterly report appear to be protected speech under *Pickering* and were, in fact, solicited by his superiors to whom they were directed, the City did not base the demotion decision on Leininger's comments but based it on findings of specific instances of misconduct, which the Board sustained. Therefore, we find no violation of First Amendment rights.

■ 5. Leininger's contention that he was denied a fair hearing due to certain improper conduct by the City is without merit. He argues first that a letter written and addressed to him by the City Manager, copies of which were sent to the Merit Board, was designed to prejudice the Board against him. There is no showing that the Board was biased by the letter. In addition, the City Manager testified regarding the matters in the letter, and Leininger had an opportunity to cross–examine him. Under these circumstances, we can find no prejudice.

■ Secondly, Leininger contends that the City violated his due process rights by failing to turn over documents to him regarding his surveillance. The City maintains it refused to turn over the documents because Leininger had already received them by improper means. The record reveals that Leininger had some of those documents in his possession at the time he made his request and that he received all of them during the hearing process and was able to cross–examine regarding those materials. Therefore, no prejudice can be found.

■ Finally, Leininger maintains that the City's rule regarding the compensation of witnesses violated his due process rights. The challenged rule provides that employees testifying before the Merit Board on behalf of the City are compensated as though they were testifying in court, and those employees who are called as adverse witnesses are granted time off, but without compensation. There is nothing in the record to indicate that this not an old rule based on the City's contract with its employees. Any challenge to the contract would be more appropriate in another forum.

■ 6. Leininger argues further that he was denied due process when the City failed to implement its Employee Assistance Program before proceeding with disciplinary action. Bloomington's Employee Assistance Program, adopted in 1975, is designed to "provide City employees and their families a confidential program for the resolution of personal problems that may affect the employee's job performance." An employee may volunteer for the program, or more commonly, his immediate supervisor refers him "to the designated resource who is professionally trained to diagnose problems and secure help" once the supervisor identifies "persistent problems as related to job performance * * * when it is apparent that normal supervision has not resolved the performance problem." Although Leininger and all of his supervisors were aware of the program, none of them considered referring him to it. There is no real dispute that Leininger's problem was appropriate for the Employee Assistance Program.

In *Turck v. St. Cloud Civil Serv. Bd.*, 268 N.W.2d 899 (Minn. 1978), this court was faced with the question of whether the City's dismissal of a police officer violated the City's Employee Assistance Program, where one of the charges against the officer was his alcohol problem. This problem could have been alleviated by referral to the program, but he was never referred to it. We first decided that failure to implement the program was nonprejudicial because the employee sought counseling for his problem himself. We concluded,

" * * * that the Employee Assistance Program Policy, while a humane and progressive step in the city's relations with its employees, does not preclude a discharge not related solely to a personal problem to which the policy applies." 268 N.W.2d at 902. Because the employment–related charges constituted just cause for the dismissal even without consideration of the alleged alcoholism, we affirmed the discharge.

In the instant case, Leininger was referred by the City to a physician, who saw him and referred him to a psychiatrist. It is difficult, therefore, to see how Leininger was prejudiced by the failure of the City to refer him to the program, since he received the very help he undoubtedly would have received had he been referred. Furthermore, Leininger's demotion was not based solely on his stress problem, which occurred after the alleged misconduct upon which the demotion was based. We find no due process violation in the City's failure to implement the program in this case.

7. Lastly, Leininger argues that he is entitled to receive pay for the period from June 6, 1977, when the City notified him in writing of its intent to demote him, to December 13, 1978, when the Merit Board rendered its opinion. It is his contention that by placing him on unrequested sick leave during that period, the City was in effect suspending him and denying him pay he was entitled to receive under the Veterans Preference Act.

 The trial court correctly noted that, pursuant to Minn.Stat. § 197.46 (1978), Leininger could not be removed from his post as sergeant until the Bloomington Merit Board found, after a hearing, misconduct or incompetence. Although a veteran may not be suspended without pay pending a determination of the charges filed against him, *Johnson v. Village of Cohasset*, 263 Minn. 425, 436–37, 116 N.W.2d 692, 700 (1962), a suspension with pay pending discharge proceedings is permissible. *Kurtz v. City of Apple Valley*, 290 N.W.2d 171, 173 (Minn. 1980). The trial court noted that the record is incomplete as to why Leininger

did not return to work as a sergeant pending completion of the hearing after the medical leave requested by Dr. Peterson on September 19, 1977, had expired. On remand, the Board should make findings in this regard. If the facts are insufficient, further hearings should be held to enable the Merit Board to act on the compensation question.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.