**CITY OF THIEF RIVER FALLS, Minnesota, Appellant,**

v.

**Allen MELBYE, Respondent.**

No. C9–86–379.

Court of Appeals of Minnesota.

Aug. 19, 1986.

Review Denied Oct. 22, 1986.

Lawrence A. McDowell, Wurst, McDowell & Ihle, Thief River Falls, for appellant.

Lee E. Wall, Dickel, Johannson, Wall, Taylor, Rust & Schmitz, Crookston, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from an order of the trial court reversing the decision of the Thief River Falls Police Civil Service Commission. The Police Commission determined that there was adequate evidence to find

misconduct by respondent Allen Melbye and demoted him from the rank of sergeant to the rank of police officer. We reverse and reinstate the decision of the Police Commission.

## FACTS

Allen Melbye was employed by appellant City of Thief River Falls as a police officer in 1973 and was promoted to the rank of sergeant in 1978. Melbye's 12 year service record with the Thief River Falls Police Department is exemplary. His personnel file contains no disciplinary reports or reprimands. He has a college degree in criminal justice and is a graduate of the FBI National Academy.

On March 17, 1985, written charges were filed by the city against Melbye alleging a number of violations of the Department's Rules of Conduct and recommending that he be discharged from employment. Melbye requested a hearing before the Thief River Falls Police Civil Service Commission pursuant to the Minnesota Veterans Preference Act, Minn.Stat. § 197.46 (1984). The commission heard the evidence, affirmed the city's findings of departmental rules violations, but decided to demote, rather than discharge, Melbye.

Melbye appealed the commission's decision to the district court. The trial court reversed the decision of the commission finding on its review that the charged acts of misconduct were unsupported by substantial evidence considered on the record as a whole. The court ordered Melbye reinstated to the rank of sergeant. This appeal followed.

Alleged Rules Violations By Melbye

A. Disclosure of a drug informant's identity.

The Commission found that Melbye on three separate occasions made comments in public about the identity of an informant actively involved in an ongoing drug investigation conducted by the Thief River Falls Police Department.

1. At a hockey game on January 5, 1985.

The first discussion of the informant took place at a high school hockey game just inside the entrance to the local arena with a fellow officer and the deputy chief. Melbye mentioned the informant's first and last name to the fellow officer and asked him several questions about the informant. The fellow officer quickly changed the subject and began talking about the hockey game.

2. At the Law Enforcement Center on January 23, 1985.

Melbye, three fellow officers, the deputy chief, two dispatchers and a friend of one of the officers were standing near the dispatcher area discussing a drug arrest made the previous night. Melbye said to one of the officers "I suppose [name of informant] is going to call you." The officer and deputy chief immediately changed the subject matter. Later the fellow officer met him in a back room away from the others and cautioned Melbye that he should be more careful about using the informant's name in front of non-law enforcement people. Melbye admitted that his comment was a "slip-up."

3. Radio Transmission of February 5, 1985.

The final incident took place on February 5, 1985 while Melbye and his partner were on patrol. Melbye made a radio inquiry concerning the status of the informant's driving privileges using the informant's driver's license number.

B. Melbye's delayed arrival at a keg party.

The commission also found that Melbye was approximately five minutes late in backing up an officer on a complaint about a party on February 6, 1985.

Melbye received a call about a loud party at an apartment building near the community college. He sent a fellow officer in one car and he and his partner arrived in another approximately five minutes later

after an arrest had been made by the first officer. He had stopped en route to talk with an investigator from the sheriff's department about a new gun the investigator had just purchased.

C. Complaints from citizens.

1. The host of the party which was broken up on February 6 appeared at the commission's hearing. He was arrested that evening for contributing to the delinquency of a minor. As he waited in the police station lobby with permission to speak to the arrested juveniles, Melbye told him to leave stating, "I'm the boss around here. I've had enough of your shit tonight, get the hell out of here."

D. Complaints from officers.

There are a host of complaints from fellow officers about Melbye and his attitude towards them. Specific complaints included:

1. On February 22, 1985 Melbye and a number of other officers on the night shift had gathered in the dispatcher area of the police station. A comment was made by a member of the group concerning accident report forms recently introduced by the state. Melbye replied, "I've never had to fill one of those out but then again, I don't have to. I have my boy do it." As he spoke, Melbye motioned towards his junior partner who testified that he was embarrassed and felt degraded in front of the others.

2. On March 1, 1985, Melbye commented to another officer in the dispatcher area of the police station that " * * * the goddam afternoon guys don't do anything around here." Asked about his complaint Melbye disclosed that a squad car which needed repair had not been looked at yet by an officer of the day shift who doubled as the department's mechanic.

3. On January 20, 1985 Melbye, while telling another officer who was using the law enforcement sally port about the chief's policy of not parking personal vehicles there, stuck his hand through the open window of the officer's car and tapped him on the chin twice.

4. On September 9, 1984 Melbye and another officer, while on night patrol, heard over the police radio that a sheriff had just arrested an individual for driving while intoxicated. Melbye said "We have to get one now too." Melbye tailgated three other vehicles in the next hour even though there was nothing unusual about the way they were driving.

5. On February 7, 1985 Melbye returned to a dinner for local law enforcement personnel at the VFW Club after responding to a fire at a former police officer's residence. He made a remark heard by others nearby that the former officer always loved woodstoves. Apparently the remark was understood by others to mean that the officer had either set the fire himself or enjoyed watching it burn. Melbye explained the remark was not meant to directly implicate the officer for the fire but rather that the officer had always been a problem for the department when he was employed and now continued to be a problem when he was gone.

## ISSUES

1. Were the Department's Rules of Conduct effectively adopted even though never posted as required by Minn.Stat. § 419.06 (1984)?

2. Is the evidence legally sufficient to support the decision of the Thief River Falls Police Civil Service Commission?

## ANALYSIS

■ 1. Melbye argues that the department's Rules of Conduct were never effectively adopted because they were never posted as required by Minn.Stat. § 419.06 (1984). The statute provides:

Copies of such rules shall be kept posted in a conspicuous place at each police station house and no rules of general application with reference to employ-

ment, promotion, discharge or suspension shall be effective until so posted.

Minn.Stat. § 419.06 (1984).

The rules were not posted as required. However, Melbye did receive adequate notice of the rules by virtue of the fact he participated in the drafting of the rules of conduct and was handed a copy of the rules after completion. That was sufficient to meet the obvious intention of the statute to place an officer on notice of departmental rules that may affect him.

■ 2. In *Leininger v. City of Bloomington*, 299 N.W.2d 723 (Minn.1980), the Minnesota Supreme Court described the standard applicable to an appellate court's review of municipal employee dismissal hearings as follows:

> Where proceedings before the administrative agency vested with final authority are instituted upon a notice which reasonably details the facts claimed to constitute misconduct so that the employee is given fair opportunity to prepare and defend; where the charges made are of a substantial nature directed at the malfeasance or nonfeasance of duties assigned to the employee and which specially relate to and affect the rights and interests of the public; and where the employee is afforded a fair hearing, the findings upon which a discharge is based are to be accepted by the court unless they are unsupported by substantial evidence on the record considered as a whole.

*Leininger* at 727 (quoting *State ex rel. Jenson v. Civil Service Commission*, 268 Minn. 536, 538, 130 N.W.2d 143, 146 (1964) *cert. denied* 380 U.S. 943, 85 S.Ct. 1023, 13 L.Ed.2d 962 (1965).)

The police commission found that the city met its burden of proof with respect to the following charges:

1. Melbye made comments in public on three separate occasions about the identity of an informant actively involved in an ongoing drug investigation conducted by the Thief River Falls Police Department. His comments placed the informant in danger and prematurely terminated the investigation.

2. Melbye was approximately five minutes late in backing up an officer on a complaint about a party on February 6, 1985. His late arrival placed the first officer on the scene in danger.

3. Numerous complaints were received from both fellow officers and private citizens regarding Melbye's conduct and attitude.

The police commission's findings concerning these charges are supported by substantial evidence. Despite Melbye's knowledge of the informant working with the police department on drug matters and repeated warnings given by Melbye's fellow officers not to use the informant's name in public, Melbye mentioned the informant's name in public for the first time at a hockey game on January 5, 1985, a second time in a group discussion at the police station and a third time over the police radio.

The record also contains sufficient evidence to support a finding that Melbye violated departmental rules by not responding immediately to a call to break up a party on February 5, 1985. Melbye himself testified that it was customary on a complaint such as this to send all available officers to the scene. Although the first arriving officer here was not put in danger by Melbye's delay, the policy is employed as a safety measure if problems should arise breaking up large drinking parties and it is necessary to have the immediate assistance of a fellow officer.

Finally, the record is replete with comments made and actions taken by Melbye which were disrespectful to both private citizens and fellow officers alike. Such behavior is unacceptable in his current position as a sergeant where he is required to supervise others. *See Leininger*, 299 N.W.2d at 728.

The trial court's memorandum questioned the interpretation given the facts of Melbye's case by the police commission.

In review of the commission's hearing the trial court may not substitute its judg-

ment for that of the administrative body charged with determining the facts of the particular case. *See State ex rel Jenson v. Civil Service Commission,* 268 Minn. 536, 130 N.W.2d 143 (1964) *cert. denied* 380 U.S. 943, 85 S.Ct. 1023, 13 L.Ed.2d 962 (1965). The supreme court stated:

> Under these rules to which we have long adhered, the administrative agency performs the factfinding function. Conflicts in the testimony and the weight to be given facts and circumstances as well as the inferences reasonably to be drawn therefrom are matters to be resolved by the agency, not the courts. The strictures of this type of judicial review require that both the trial court and this court refrain from substituting their judgment concerning the inferences to be drawn from the evidence for that of the agency.

*Id.* at 538, 130 N.W.2d at 146.

The facts gathered by the police commission and the inferences to be drawn from them are matters solely within the province of the administrative agency. The court's only function upon review is to determine whether the facts reasonably support the findings made by the commission.

## DECISION

Reversed.