**Randall L. BUSH, Appellant,**

v.

**CITY OF ST. JOSEPH, et al., Respondents.**

No. CO–86–545.

Court of Appeals of Minnesota.

Nov. 4, 1986.

Phillip S. Resnick, Minneapolis, for appellant.

Thomas G. Jovanovich, St. Cloud, for respondents.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

The Veterans Preference Board found that substantial evidence of misconduct justified the city council's decision to terminate appellant, a police officer. Appellant challenges the trial court decision affirming the board's findings. We affirm.

## FACTS

In May 1982, a group of citizens appeared before the City Council of the City of St. Joseph with complaints against appellant Randall Bush, a police officer, alleging misconduct on several occasions. In June 1982, the city council suspended Bush with pay pending the city's investigation of the complaints. The investigation results were reported to the city council and in August 1982, the council voted to terminate appellant based on their finding of misconduct on eight occasions, including four instances of excessive use of force.

Bush exercised his right to have the decision reviewed by a Veterans Preference Board pursuant to the Veterans Preference Act. Minn.Stat. § 197.46 (1984). In February 1983, the board filed its decision. The board found that on two occasions Bush used excessive and unjustifiable force under the circumstances. The first incident involved John Mueller, age 17, on June 5, 1980. At approximately 12:30 a.m. Mueller's car ran out of gas as he was driving home from a party. Mueller and his passenger Todd Deaton were waiting for a friend to help them when Bush approached the car. Mueller refused to give Bush his driver's license and Bush then told Mueller to get into the police car. According to Mueller, once he got into the police car Bush grabbed him from behind the neck, pulled his head down into the steering wheel, pulled his hair and hit him on top of the head. Mueller further testified that while Bush was holding him he swung at Bush, trying to get away.

Bush testified that while he and Mueller were in the police car waiting for the car registration information, Mueller said he was leaving and started opening the car door. Bush then grabbed Mueller's shoulder and outer clothing and pulled him toward the middle of the car. Bush testified Mueller then took a swing at him. Bush acknowledged he pulled on Mueller's hair, put his hands on Mueller's head, and pulled Mueller forward.

The second incident involved Mike Poepping. On December 12, 1981, Mike Poepping was in St. Joseph with two friends, Gordy Hamilton and John Wahlstrom. As the boys walked towards a pizza parlor they observed a scuffle going on between four other teenagers. Mike Poepping perhaps accidentally got involved in the scuffle.

Officer Bush arrived at the scene and told John Wahlstrom to get into the car. Wahlstrom told Bush he was not going to get into the car because he did not do anything wrong. John Wahlstrom then turned away, with his back to Officer Bush. Poepping testified that he put his hand out to intercept Bush who was going to hit Wahlstrom with his night stick. According to Poepping, Bush hit Poepping in the gut with his fist and then took his night stick and hit Poepping on the left shoulder. The blow caused Poepping to lose his breath and fall against a building.

Bush testified he did not threaten to hit Wahlstrom. Rather, Poepping stepped in front of Bush, grabbed Bush's jacket, and told Bush to leave Wahlstrom alone be-

cause Wahlstrom did not do anything. Bush further testified that he hit Poepping in the stomach with the night stick to prevent Poepping from hitting him.

Based on the testimony relating to these two incidents, the Veterans Preference Board unanimously found that "there is substantial evidence of misconduct which justifies the discharge of Officer Randall Bush." As to the remaining allegations, the board found that either the incidents were insubstantial or that the use of the force was justified.

Bush appealed the board's decision to the district court in March 1983. On December 6, 1983, the district court issued an order finding there was substantial evidence to warrant dismissal and remanding the case for the limited purpose of permitting the board to exercise its authority to fashion a remedy other than that imposed by the city. The Veterans Preference Board heard oral arguments on the issue of sanctions and one year later (December 18, 1984) issued a decision affirming termination as the proper sanction, one member dissenting. On January 8, 1985, Bush again appealed the decision of the board to the district court. After delay of another year (February 26, 1986), the district court summarily upheld the Veterans Preference Board's decision to affirm termination.

## ISSUE

Are the findings of the Veterans Preference Board supported by substantial evidence on the record as a whole?

## ANALYSIS

■ An employee who is a veteran cannot be dismissed or demoted except for "incompetency or misconduct." Minn.Stat. § 197.46 (1984). The Minnesota Supreme Court has ruled that the legal standard for "incompetency or misconduct" is similar to the legal standard for "just cause" required by Minn.Stat. § 44.08, subd. 1 (1984) (no city employee may be dismissed or suspended except for "just cause"). *Ekstedt v. Village of New Hope*, 292 Minn. 152, 162, 193 N.W.2d 821, 828 (1972). *Ekstedt*

held that the "reason for dismissal must relate to the manner in which the employee performs his duties," and must be supported by substantial evidence. *Id.* at 162–63, 193 N.W.2d at 828 (quoting *Hagen v. State Civil Service Board*, 282 Minn. 296, 299, 164 N.W.2d 629, 632 (1969)).

The findings of fact and decision of the Veterans Preference Board demonstrate the board recognized the standard to be used and correctly applied this standard. The board stated in its findings and decision that the purpose of the hearing was "to determine whether or not there was substantial evidence of incompetency or misconduct to justify the discharge of Randall L. Bush as a police officer." The board found that Bush used excessive and unjustifiable force in two incidents and therefore determined that substantial evidence of misconduct justified Bush's discharge.

Appellant Bush alleges the amount of force used in both situations was "reasonable force" and therefore is not evidence of misconduct. Appellant cites Minnesota Statute § 609.06, which authorizes "reasonable force":

Reasonable force may be used upon or toward the person of another without his consent when the following circumstances exist or the actor reasonably believes them to exist:

(1) When used by a public officer or one assisting him under his direction:

\*   \*   \*   \*   \*   \*

(b) In the execution of legal process; or

\*   \*   \*   \*   \*   \*

(d) In executing any other duty imposed upon him by law;

\*   \*   \*   \*   \*   \*

Minn.Stat. § 609.06(1) (1984).

■ The board's findings that the force used was excessive and unjustified must be upheld on review unless they are not supported by substantial evidence on the record considered as a whole. *Leininger v. City of Bloomington*, 299 N.W.2d 723, 727

(Minn.1980). The testimony of Mueller and Poepping, concerning the 1981 and 1982 incidents respectively, describe circumstances where the board could conclude that the amount of force used was excessive and not reasonable. Further, other witnesses who testified at the hearing corroborated the testimony of Poepping and Mueller.

Todd Deaton, Mueller's passenger at the time of the 1981 incident, remained in Mueller's car while Mueller went to the police car. Deaton looked in the rear view mirror when he heard the horn honking in the police car. Deaton did not see Mueller but he saw Bush's arm go down. Deaton went over to the squad car and opened the door. He observed Mueller's head in Bush's lap, up against the steering wheel, with Bush's hand on top of Mueller's head. Deaton asked, "What the hell is going on?". Mueller got up, was very upset, "to the point of crying," and ran into the field. Deaton and another witness who examined Mueller's head the evening of the 1981 incident testified as to the nature and extent of the injuries on Mueller's head. Both witnesses observed missing and loose hair in addition to bumps.

There was also testimony consistent with Poepping's description of the circumstances and the amount of force used in the 1982 incident. The testimony of Poepping and Wahlstrom supports the inference that Poepping did not act in a threatening manner towards Bush; rather, Poepping was trying to intercept Bush's intent to hit Wahlstrom. Even under the circumstances described by Bush's testimony, it would be reasonable to infer that the force used, two blows that forced Poepping to slump, fall back and lose his breath, was unjustified and excessive.

The use of excessive and unjustified force while detaining these two juveniles reflects on the qualifications of the officer in performing his duties and directly affects the rights and interests of the public. *See Ekstedt,* 292 Minn. at 162–63, 193 N.W.2d at 828. The City of St. Joseph police department manual provides support for the decision to dismiss Bush for use of excessive force. The section concerning arrests and procedures states that no unjustifiable force or violence will be used at any time. The section on discipline states that the violation by a member of any department rule, duty or order may be considered sufficient cause for discharge, suspension or other penalty.

### DECISION

In reviewing the record as a whole, substantial evidence supported the finding that appellant used excessive and unjustified force on two occasions while performing his duties as a police officer. The district court properly upheld the Veterans Preference Board's decision to affirm termination as the proper sanction for such misconduct.

Affirmed.