PAUL E. SAILORS, APPELLANT, v. CITY OF FALLS CITY, NEBRASKA, ET AL., APPELLEES.

206 N. W. 2d 566

Filed April 13, 1973. No. 38614.

Wiltse & Halbert and McGrath, North, Nelson, Shkolnick & Dwyer, for appellant.

Simon Lantzy, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

Paul E. Sailors has appealed from a judgment of the District Court affirming the action of the Civil Service Commission of the City of Falls City, Nebraska, in discharging Sailors from his employment as a police officer.

The events which led to the discharge occurred on February 9, 1972. Paul E. Sailors, a sergeant of the Falls City police department, and a fellow officer had been in Kansas City that day on police business. Sailors testified that they stopped for a couple of drinks on the return trip to Falls City and after arriving in Falls City at 6 p.m., Sailors had one drink at the Elks Club, and "not over two" drinks at the home of his fellow officer. Sailors went home about 7 p.m. He considered himself off duty at that time, being relieved of his normal night shift.

At approximately 7:30 p.m., George C. Davis, the pastor of a local church, made his first business call as a salesman for the Encyclopedia Britannica. Davis had lived in Falls City only a few months and was undertaking to supplement his income. He was calling on persons whose names and addresses were furnished to

him by the publisher on "lead cards." The printed cards represented requests to the company for information about its encyclopedia. Among the cards furnished to Davis was one containing the typed name and address of officer Sailors' wife. Shortly after 7:30 p.m., Davis arrived at the Sailors' residence and after he had identified himself and his purpose, he was invited in by Mrs. Sailors. Davis was seated in the Sailors' living room. There was some conversation as to whether Mrs. Sailors had signed or sent in any card and whether Davis had a permit. After some discussion, officer Sailors placed Davis under arrest and telephoned the Falls City police department to send an officer to pick him up. When Davis asked what he was under arrest for, Sailors testified that he told him "fraud, you need to be investigated." Another officer then picked up Davis and took him to the police station. When Davis arrived at the police station, he was allowed to call his wife and he also called the chief of police, who came to the police station. Officer Sailors, on his own initiative, also went to the police station. There he made a telephone call to the county attorney and gave him Sailors' version of the incident and charges. The county attorney instructed Sailors to hold Davis until morning. Davis was lodged in jail about 8:30 p.m. Through the evening, Davis continually protested that he was innocent of any wrongdoing and that Sailors was intoxicated. At approximately 11:30 p.m., the county attorney directed that Davis be taken to the county attorney's office and also directed that Sailors attend. Davis was then interrogated for approximately an hour. The interrogation was tape recorded. The civil service commission heard the recording which is transcribed and part of the record here. It establishes rather clearly Sailors' rude and discourteous conduct and his continued refusal to accept or believe Davis' statements. At the conclusion of the interrogation, Davis was allowed to go home and instructed to return the next morning. No

charges of any kind were ever formally filed against Davis.

On February 28, 1972, Davis appeared before the civil service commission and complained of the treatment he had received from Sailors. The commission requested a written statement from Davis which he filed on or about March 2. On March 2, after preliminary investigation, the commission directed that a copy of Davis' written accusation be furnished to Sailors and recommended to the mayor and city council that preliminary disciplinary action be taken suspending Sailors without pay until such time as he could appear before the commission to be heard if he desired to do so. On March 6, 1972, the commission adopted a resolution which stated that it had investigated Davis' complaint and found Sailors was guilty of improper conduct and suspended him from duty indefinitely without pay. The resolution provided for notice to Sailors of his suspension and set out the time allowed to request a public hearing. A copy of the resolution and notice was served on him on March 6, 1972.

Sailors requested an investigation and public hearing as provided by statute. The public hearing was held before the civil service commission on March 27, 28, and 29, 1972. Following the hearing, the civil service commission found that Paul E. Sailors was guilty of intemperance and discourteous treatment of the public and of actively participating in and directing an investigation at a time when he had "consumed a number of alcoholic drinks." The commission found him to be unsuitable to continue in the public service as a member of the police department and recommended to the appointing power that the indefinite suspension of March 6, 1972, be made a permanent suspension. The city council then ordered the proper city officials to enforce the findings and decision of the civil service commission.

Sailors appealed to the District Court. The District

Court, after its review of the record and proceedings before the civil service commission and the filing of written briefs, found that the dismissal of Sailors as a member of the police department was made by the civil service commission of the City of Falls City, Nebraska, in good faith, free of prejudice or bias, and said dismissal was made for cause as provided in sections 19-1807 and 19-1808, R. R. S. 1943. The action of the civil service commission was affirmed and judgment was entered on June 12, 1972. This appeal followed.

Sailors' basic contention is that there was insufficient evidence to establish that his dismissal was made in good faith for cause. The Civil Service Act regulates the hiring, suspension, and discharge of certain employees of the fire and police departments in the cities where it is applicable. It prohibits the suspension or discharge of employees for political or religious reasons but provides that employees may be suspended or discharged for cause for any of the reasons which are listed in section 19-1807, R. R. S. 1943. Intemperance, discourteous treatment of the public, or the use of intoxicating liquors to the extent that the use thereof interferes with the efficiency or fitness of the employee or precludes him from properly performing the functions and duties of any position under the civil service are all reasons for suspension or discharge under section 19-1807, R. R. S. 1943.

An explanation of the statutory civil service scheme is contained in Ackerman v. Civil Service Commission, 177 Neb. 232, 128 N. W. 2d 588. That case holds: "The purpose of the appeal to the district court is to permit the employee to obtain a determination only as to whether the order of the commission was made in good faith for cause. If the evidence in the district court is sufficient to show that the order of the commission was made in good faith for cause, then the order of the commission must be affirmed." The record here fully sustains the finding of the District Court that the

order of the commission was made in good faith for cause.

Sailors levels several objections to the jurisdiction and authority of the civil service commission to act. He asserts that he was entitled to notice and hearing in connection with the preliminary investigation of Davis' accusation before his suspension, as well as the notice and public hearing which he received after his suspension on March 6. He also contends that the commission had no authority to enter a preliminary suspension and that one member of the commission should have been disqualified for prejudice.

The case of Wachtel v. Fremont Civil Service Commission, *ante* p. 49, 206 N. W. 2d 56, makes it clear that the final determination of discharge of an employee under the Civil Service Act rests in the civil service commission, and that two hearings and two services of notice are not required.

Under section 19-1808, R. R. S. 1943, suspension or discharge is initiated by a written statement of accusation by "the appointing power or any citizen or taxpayer." When so initiated before the commission, either the appointing power may temporarily suspend or the commission may direct such temporary suspension.

Sailors' contention that one of the commissioners should disqualify himself was based upon a wholly unsupported allegation that the commissioner, who was previously a police officer, had resigned because of differences with Sailors. Sailors proposed to call the commissioner as a witness and when this was refused, made an offer to prove such allegation by the commissioner's testimony as to any alleged prejudice and failed to introduce any evidence of bias or prejudice of any kind. While there is no provision in the Civil Service Act for disqualification of a commissioner, it is quite apparent that evidence of bias or prejudice might require disqualification in a particular case. That is not this case. One asserting the disqualification of

a civil service commissioner for prejudice must prove facts and circumstances which clearly show such bias or prejudice in order to overcome the presumption of impartiality. See State v. Smith, 77 Neb. 824, 110 N. W. 557. In the absence of even a prima facie showing of prejudice, the commission did not abuse its discretion in refusing to require the disqualification of one of its members.

The District Court specifically found that the procedures followed by the commission in its hearing were as provided by the laws of the State of Nebraska, and were in all respects conducted in a fair and impartial manner. That finding was correct.

Finally, Sailors challenges the entire proceedings because the civil service commission had not adopted suitable rules and regulations for the purpose of carrying into effect the provisions of the Civil Service Act as required by statute.

The District Court specifically found that the civil service commission of the City of Falls City, Nebraska, did not make, print, or disseminate rules and regulations as provided in section 19-1804(1), R. R. S. 1943. Section 19-1820, R. R. S. 1943, also requires such rules and regulations and provides that a failure to comply shall be deemed a violation of the act. A violation is punishable as a misdemeanor. We cannot excuse the commission's failure to make such rules and regulations. Neither do we make any attempt to justify an apparent long-continued violation of the clear requirements of the statutes. Nevertheless, the provisions for suspension and discharge set out in the statutes are extensive and explicit and the record is devoid of any showing of prejudice to Sailors because of the absence of rules and regulations. He was not dismissed for any technical violation of rules or regulations of the commission or the police department. He was discharged for reasons specifically enumerated in section 19-1807, R. R. S. 1943, and in accordance with the procedures

spelled out in the statutes. The procedures followed by the civil service commission here were fair and reasonable and did not violate the statutory provisions.

The evidence at the public hearing before the civil service commission and considered by the District Court was more than sufficient to establish that the order of the commission was made in good faith for cause. The judgment of the District Court was correct and is affirmed.

AFFIRMED.