SEAN BUSCH, APPELLANT AND CROSS-APPELLEE,
v. CIVIL SERVICE COMMISSION FOR THE
CITY OF ALLIANCE, NEBRASKA,
APPELLEE AND CROSS-APPELLANT.

___ N.W.2d ___

Filed February 25, 2014.    No. A-13-391.

1. **Administrative Law: Appeal and Error.** In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency.

2. **Administrative Law: Evidence.** The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it.

3. **Administrative Law: Appeal and Error.** The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact.

4. **Administrative Law: Words and Phrases.** Agency action is arbitrary and capricious if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion.

5. **Constitutional Law: Due Process.** The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.

6. **Appeal and Error.** On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

7. **Civil Service: Administrative Law: Termination of Employment.** Neb. Rev. Stat. § 19-1832(3) (Reissue 2012) permits an employee to be discharged for physical unfitness for the position which the employee holds.

8. **Civil Service: Administrative Law: Termination of Employment: Municipal Corporations: Ordinances.** The Civil Service Act, Neb. Rev. Stat. § 19-1825 et seq. (Reissue 2012), provides that no person in the civil service shall be discharged except for cause and then only upon a written accusation. The governing body of a municipality shall establish by ordinance procedures for acting upon such written accusations.

9. **Administrative Law.** Agency action taken in disregard of the agency's own substantive rules is arbitrary and capricious.

10. **Civil Service: Administrative Law: Termination of Employment: Time.** Neb. Rev. Stat. § 19-1833 (Reissue 2012) provides that a written accusation is required and that after discharge, the employee may, within 10 days after being notified of the discharge, file with the commission a written demand for an investigation, followed by a hearing.

11. **Constitutional Law: Public Officers and Employees: Termination of Employment: Due Process.** When a public employer deprives an employee of a property interest in continued employment, constitutional due process requires that the deprivation be preceded by (1) oral or written notice of the charges, (2) an explanation of the employer's evidence, and (3) an opportunity for the employee to present his or her side of the story.

12. **Termination of Employment: Due Process.** Deficiencies in due process during pretermination proceedings may be cured if the employee is provided adequate posttermination due process.

13. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

14. **Civil Service: Administrative Law: Records: Appeal and Error.** Neb. Rev. Stat. § 19-1833(5) (Reissue 2012) requires that on appeal from the Civil Service Commission to the district court, a certified transcript of the record and all papers on file in the office of the commission affecting or relating to the judgment or order on appeal be provided.

15. **Civil Service: Administrative Law: Legislature: Attorney Fees: Costs: Appeal and Error.** In enacting the Civil Service Act, the Legislature did not authorize the award of fees or costs except when the appealing party was the governing body.

Appeal from the District Court for Box Butte County: Randall L. Lippstreu, Judge. Affirmed.

Andrew W. Snyder, of Chaloupka, Holyoke, Snyder, Chaloupka, Longoria & Kishiyama, P.C., L.L.O., for appellant.

Howard P. Olsen, Jr., and John F. Simmons, of Simmons Olsen Law Firm, P.C., for appellee.

Inbody, Chief Judge, and Moore and Riedmann, Judges.

Riedmann, Judge.

## INTRODUCTION

The city manager of the City of Alliance (City) terminated the employment of Sean Busch, a police sergeant, following Busch's long-term absence from his job due to a non-work-related injury. The civil service commission (Commission) for the City upheld the termination, and Busch sought review by the district court for Box Butte County, which affirmed the Commission's decision. Busch appeals the termination, and

the Commission cross-appeals the denial of its motion to tax certain costs to Busch. We affirm.

## FACTUAL BACKGROUND

Busch began his employment as a patrol officer in January 1999. His employment record has largely been exemplary, and he was promoted to sergeant in 2008. His job duties required him to investigate crimes, make patrol stops, chase down suspects, operate heavy equipment, and shoot a weapon. There is a minimum lifting requirement of 100 pounds, and it takes 5½ pounds of force to pull the trigger on the Glock semi-automatic weapon currently used by employees of the police department.

Busch began experiencing pain in his right hand in March 2012. It was initially believed he had fractured his hand, and on March 20, he was restricted to lifting no more than 2 pounds. Further investigation resulted in a diagnosis of a cyst in Busch's right wrist requiring surgery. A "Return to Work" form dated April 23, 2012, indicated that the 2-pound lifting restriction was still in effect until surgery scheduled for May 2, after which Busch would be unable to work for 2 to 6 weeks. By June, physicians permitted Busch to return to work with a restriction of lifting or carrying no more than 5 pounds. Busch requested light duty, and John Kiss, the City's police chief, recommended a light-duty position at full pay, but J.D. Cox, the City's manager, did not approve. Instead, Cox offered a light-duty office position in a different department to Busch at about half his normal pay, an offer that Busch declined.

Busch had exhausted his paid leave time in early May 2012 and was granted an additional 12 weeks' leave pursuant to the Family and Medical Leave Act of 1993, which leave was scheduled to expire on August 5, 2012. On July 24, Busch submitted a written request to Cox and Kiss for a minimum of 2 months' additional unpaid leave of absence. The following day, July 25, Busch obtained a release from his physician to return to work on August 1 with no restrictions. It is undisputed that Busch did not immediately inform Cox or Kiss of

the July 25 appointment and the attendant release to return to work.

Unaware of Busch's medical appointment, Kiss submitted a memorandum to Cox on July 25, 2012, recommending that Busch's latest request for extended leave be denied. Kiss cited hardships to the police department caused by Busch's extended absence, noting that the department had been without a supervisor since March 2012 and that other officers had been performing his duties, resulting in overtime pay and "comp time." Kiss had a conversation with Busch on August 1 in which Busch told him that his next medical appointment was the following week, on August 8, and did not inform Kiss that, in fact, he had already had an appointment on July 25 and knew he had been released to return to work on August 1.

Meanwhile, having received no response to his request for additional unpaid leave, Busch visited Cox unannounced at Cox's office on August 3, 2012, in an agitated state, demanding to know if Cox planned to fire him. Cox told Busch that he planned to extend his leave until August 8, which he believed to be Busch's next medical appointment. Busch then admitted to Cox that he had actually seen his doctor on July 25—but he told Cox that his work restrictions remained in place. Surprised to learn that the appointment had already taken place, Cox inquired about the "Return to Work" form that was typically provided to the City following Busch's medical appointments. Busch responded that "it hadn't made its way over [there] yet," despite the fact that Busch was in possession of the form. Cox testified that he lost confidence in Busch following Busch's admission that his medical appointment had already taken place and Cox's subsequent discovery that no departments of the City had received a copy of the "Return to Work" form such as they had routinely received following past appointments.

Cox stated that this loss of confidence in Busch prompted him to request that Busch sign a release of his medical records so that Cox could determine why additional leave was needed. Busch refused to permit access to his medical records. The record contains a copy of Cox's August 3, 2012, e-mail to Busch sent after the impromptu meeting recounted above:

Dear [Busch],

You have asked for 30 days of extended leave pursuant [to] "7.04 of City of Alliance Personnel Manual - Leave without Pay outside of [Family and Medical Leave Act] Provisions." In order to grant that request, I must show good cause and that the request is in the best interest of the City.

You have been off almost five months as the result of surgery to remove a cyst in your hand. I would be remiss in granting your request without an opportunity to review your medical records in hopes of understanding what has happened with your hand necessitating the expiration of all leave afforded you by the City . . . .

I am disappointed that you have declined our request for a release of medical records.

I would like to discuss with you at 8:00 am Monday morning the status of your employment.

Feel free to bring a representative with you.

At the subsequent meeting on Monday, August 6, Busch again declined Cox's request for access to his medical records. Cox asked for Busch's resignation, and Busch declined. The meeting ended with Cox's stating that he would "get back with" Busch about his employment status. Cox called Busch later that day to inform him that the City would pursue termination of his employment upon the filing of the required documents with the secretary of the Commission.

## PROCEDURAL BACKGROUND

On August 10, 2012, Cox sent a written "Accusation" to the secretary of the Commission in which he extensively detailed the history of Busch's injury and the resulting work restrictions and time off work. The "Accusation" concluded that the needs of the organization and the department took primary precedence; that Busch had expired all leave banks; that Busch elected not to take a temporary alternate position; that Busch failed to produce any documentation to show that he could fulfill the essential functions of his job within a reasonable amount of time; and that after all leave banks were expired, Busch refused to grant the release of his medical records upon

his request for an extraordinary further extension of leave. On the same date, the Commission forwarded a copy of the "Accusation" to Busch, along with a letter informing him of his right to appeal within 10 days and of the requirement that he then provide to the Commission and to Cox a written demand for an investigation and public hearing. Busch complied, and the public hearing was held on October 1 and 11.

The secretary of the Commission, who was a City employee, testified that she was present at the August 3 and 6, 2012, meetings between Cox and Busch. She stated that Busch had not been forthcoming about his July 25 medical appointment and that she was shocked when he admitted that he had seen the doctor on July 25. She testified that at the August 6 meeting, Busch wanted an answer as to whether his employment was to be terminated, but that Cox said he needed time to consider the matter. The secretary stated that Busch was asked to relate why his employment should not be terminated and that Busch replied that he was tired of "the game playing" and stated that if he had been placed on light duty, he would not have had to use all of his leave banks. She testified that Busch told Cox that it would be at least another month before he could return to fulfill the essential requirements of his job.

The secretary claimed that the medical release Busch was asked to sign would have been limited to issues related to his wrist, but she admitted that the document present in the room at the August meetings contained no restrictions on the information that could be requested. She acknowledged that the City had no policy requiring the release of medical records and that Busch was never told that refusal to sign the medical release would be held against him. The secretary further conceded that she was unaware of any meeting that took place after the August 10, 2012, "Accusation" that gave Busch the opportunity to present his version of the circumstances that resulted in the filing of the "Accusation." She stated that she did not receive from Kiss a written recommendation following the "Accusation" and did not receive from Cox a copy of a decision made following Kiss' written recommendation.

Kiss acknowledged that he did not receive a copy of the August 10, 2012, "Accusation" and therefore did not conduct an investigation of it. He stated that after August 10, he had never met with Busch to explain the "Accusation," given Busch an opportunity to present his version of the facts, or recommended in writing to Cox that Busch's actions warranted "removal." He stated that he did, however, review draft copies of the "Accusation."

In an order dated October 15, 2012, the Commission affirmed the actions of Cox in terminating Busch's employment with the City. The Commission found that Cox's conclusions, set forth in the "Accusation" of August 10, were supported by competent evidence, were made in good faith for cause, and were not based upon any political or religious reasons. The Commission stated that Cox's conclusion and decision were based on competent evidence that existed prior to August 10 and were properly confirmed by evidence presented at the appeal hearings after August 10. Busch timely filed his petition in error with the district court.

In its April 3, 2013, memorandum order, the district court recounted the facts of Busch's case at length, noting that there was not much factual dispute in the case. The court mistakenly stated that the decision of the Commission was not in its record but that it was nonetheless able to address Busch's assigned errors. The district court affirmed the Commission's decision affirming Busch's discharge from his employment. Later realizing its error in overlooking the Commission's written decision, the court entered a supplemental order on April 5 in which it stated that it had now read the decision and reaffirmed its conclusion to affirm the Commission's decision.

On appeal to the district court, the Commission sought to recover $2,588.55, the cost of transcribing and certifying the record of the proceedings. Finding no statutory authority for the assessments of these costs, the district court denied the motion.

Busch timely appealed from the district court's order affirming the Commission's decision. The Commission properly

cross-appealed under Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2012) with regard to the district court's denial of its motion for costs.

## ASSIGNMENTS OF ERROR

Busch contends, restated and summarized, that the district court erred in applying an incorrect standard of review to the Commission's decision, in concluding that the Commission's decision was made in good faith for cause, and in failing to find that the Commission acted in an arbitrary and capricious manner by applying the technical rules of evidence.

In its cross-appeal, the Commission assigns error to the district court's denial of its motion to recover the cost of transcribing and certifying the verbatim record of the proceedings before it.

## STANDARD OF REVIEW

[1-4] In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency. *Fleming v. Civil Serv. Comm. of Douglas Cty.*, 280 Neb. 1014, 792 N.W.2d 871 (2011). The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it. *Id.* The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact. *Id.* Finally, agency action is arbitrary and capricious if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion. *Id.*

[5,6] The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *Id.* On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.*

## ANALYSIS

*Did District Court Apply Correct*
*Standard of Review?*

Busch first asserts that the district court applied an incorrect standard of review when it reviewed the Commission's decision on Busch's petition in error. Busch points to the district court's initial mistaken belief that the Commission's order was not in the record.

With regard to appeals from a civil service commission, Neb. Rev. Stat. § 19-1833(5) (Reissue 2012) sets forth the scope of the district court's review:

> The district court shall proceed to hear and determine such appeal in a summary manner. The hearing shall be confined to the determination of whether or not the judgment or order of removal, discharge, demotion, or suspension made by the commission was made in good faith for cause which shall mean that the action of the commission was based upon a preponderance of the evidence, was not arbitrary or capricious, and was not made for political or religious reasons.

In *Fleming v. Civil Serv. Comm. of Douglas Cty.*, 280 Neb. 1014, 1015, 792 N.W.2d 871, 875 (2011), the Nebraska Supreme Court set forth the standard of review applicable to a district court reviewing a decision by a civil service commission: "In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency."

The district court's order sets forth the language of both § 19-1833(5) and *Fleming, supra*. Busch contends, however, that because the district court did not review the Commission's decision prior to issuing its first order, it could not have applied the proper standard of review. Busch is correct that a district court, sitting as the reviewing court in an error proceeding, does not make independent findings of fact. Due to the district court's mistaken belief that it did not have the Commission's report, it made findings of fact, pointing out that the facts were largely undisputed. The district court corrected

its mistake, however, when it issued its supplemental order. It specifically reaffirmed its conclusion that the Commission's decision should be affirmed. It is the supplemental order that is the final, appealable order.

Moreover, in an appeal of an agency decision to this court, we review the agency decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency. Upon our review of the Commission's decision, we find that it was within its jurisdiction and that sufficient, relevant evidence supported its decision, as more fully set forth below.

*Was Commission's Decision
Arbitrary and Capricious?*

[7] The Civil Service Act, Neb. Rev. Stat. § 19-1825 et seq. (Reissue 2012), regulates the hiring, suspension, and discharge of certain employees of the fire and police departments in the cities where it is applicable. It prohibits the suspension or discharge of employees for political or religious reasons, but provides that employees may be suspended or discharged for cause for any of the reasons which are listed in § 19-1832. Section 19-1832(3) permits an employee to be discharged for "physical unfitness for the position which the employee holds." Neb. Rev. Stat. § 19-646 (Reissue 2012) vests city managers with authority to make employment decisions subject to the civil service provisions of the Civil Service Act.

[8] The Civil Service Act further provides that no person in the civil service shall be discharged except for cause and then only upon a written accusation, and that the governing body of a municipality shall establish by ordinance procedures for acting upon such written accusations. See § 19-1833(1) and (2). The City established such procedures in ordinance No. 1855, art. III, § 5, passed October 24, 1985, which are summarized as follows, in relevant part: A written accusation must be filed with the secretary of the Commission, who shall deliver a copy within 72 hours to the police chief, the city manager, and the employee. Prior to the decision of the city manager, the police chief shall, within a reasonable time, investigate the alleged misconduct, charges, or grounds against the employee

and provide the employee an opportunity to present his or her version of the circumstances. Upon completion of the investigation, the police chief shall recommend, in writing, whether he or she agrees that the alleged misconduct, charges, or grounds warrant removal or discharge or a lesser penalty. Within 5 days of the police chief's written recommendation, the city manager can accept or reject the recommendation and then file his or her decision within 4 calendar days with the secretary of the Commission, who will then file a copy with the police chief and the employee. The employee then has 10 days to file a written demand for an investigation and public hearing.

[9] Busch contends that the ordinance constitutes a substantive rule and that the failure to strictly follow it results in a decision that is arbitrary and capricious. Busch is correct that agency action taken in disregard of the agency's own substantive rules is arbitrary and capricious. See *Middle Niobrara NRD v. Department of Nat. Resources*, 281 Neb. 634, 799 N.W.2d 305 (2011). However, the ordinance upon which Busch relies is procedural, not substantive. Section 19-1833(1) and (2) authorizes the governing body to establish *procedures* for acting upon an accusation. The City's ordinance No. 1855, art. III, § 5(c), established those procedures. Therefore, the failure to follow the steps set forth in the ordinance does not necessarily result in an arbitrary and capricious decision.

Our decision is supported by *Sailors v. City of Falls City*, 190 Neb. 103, 206 N.W.2d 566 (1973), in which the Nebraska Supreme Court held that the failure of a civil service commission of a city to promulgate *any* procedural termination rules and regulations, in violation of statute, did not negate an employee's termination. In *Sailors*, the court stated that despite the absence of statutorily mandated rules and regulations, the employee was not prejudiced, because his employment was terminated "in accordance with the procedures spelled out in the statutes." 190 Neb. at 109-10, 206 N.W.2d at 570.

[10] We likewise determine that although several of the procedural steps outlined in the ordinance were omitted in the course of Busch's case, his employment was terminated in accordance with the procedures spelled out in the statute.

Section 19-1833 provides that a written accusation is required and that after discharge, the employee may, within 10 days after being notified of the discharge, file with the commission a written demand for an investigation, followed by a hearing. Cox filed the "Accusation" in this case on August 10, 2012. On August 17, Busch filed a demand for an investigation, which was conducted. The Commission held a subsequent hearing, as required by statute. As in *Sailors*, we find no prejudice in the failure to strictly comply with the procedures set forth in the ordinance. We further determine that Busch was provided adequate due process in his termination proceeding.

[11] In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), the U.S. Supreme Court held that when a public employer deprives an employee of a property interest in continued employment, constitutional due process requires that the deprivation be preceded by (1) oral or written notice of the charges, (2) an explanation of the employer's evidence, and (3) an opportunity for the employee to present his or her side of the story. See *Hickey v. Civil Serv. Comm. of Douglas Cty.*, 274 Neb. 554, 741 N.W.2d 649 (2007).

[12] In *Scott v. County of Richardson*, 280 Neb. 694, 789 N.W.2d 44 (2010), the Nebraska Supreme Court held that notwithstanding a person's due process rights set forth above, deficiencies in due process during pretermination proceedings may be cured if the employee is provided adequate posttermination due process. In *Scott*, the employee was given neither adequate notice of the charges, an explanation of his employer's evidence, nor an opportunity to explain his side of the story before his employment was terminated. After the termination, the employee was given a hearing before a county grievance board. The Nebraska Supreme Court pointed out that prior to the termination, the employee had met with his supervisor and was advised of the reasons why he was being placed on paid suspension. He also was given an opportunity to tell his side of the story. Following the termination, he was given an extensive hearing in which he was allowed to present testimony. The Nebraska Supreme Court reversed the

district court's order reinstating the employee, finding that his posttermination proceeding cured the pretermination due process violations.

Likewise, in the present action, although the procedures outlined in the ordinance were not followed, Busch was well aware of the reason for his termination as a police officer. The meetings with Cox on August 3 and 6, 2012, involved extensive conversations about Busch's employment status as a result of his extended leave, including his existing restrictions and Cox's request for his medical records. By the end of the August 6 meeting, Cox had asked for Busch's resignation. The secretary of the Commission testified that Busch was asked at one of the August meetings why his employment should not be terminated and that he answered the question. Following the termination, he was provided a full hearing before the Commission which lasted 2 days. We determine that Cox's failure to strictly follow the procedural rules set forth in the ordinance does not necessitate a finding that the decision to terminate Busch's employment was arbitrary and capricious.

*Was Commission's Decision Made
in Good Faith for Cause?*

Busch contends that the Commission's order was not based on competent evidence. He points to his history of good performance evaluations which were recently downgraded as a result of his absence from work, according to Kiss. Busch asserts that this downgrade was evidence of bad faith. He complains that neither Cox nor Kiss conducted any investigation as to whether he could perform the essential functions of his job, noting that he is ambidextrous and that his restriction was limited to his right hand. We find these arguments unpersuasive. There was no evidence that the recent downgrading of Busch's performance evaluations had any bearing on his termination of employment, while there was significant evidence that Cox and Kiss were told only that Busch required additional leave from his job. Notwithstanding his claimed proficiency with both hands, it was clear that the significant

restrictions on Busch left him largely unable to perform his regular job duties in the eyes of Cox and Kiss in the early days of August 2012.

Busch additionally argues that his termination of employment was based, in part, on his refusal to provide his medical records to Cox, someone with no medical training or ability to properly review and analyze them. However, there is adequate evidence to show that his employment was terminated primarily because he had requested additional leave time following an already extended period of leave and that he did not inform Cox or Kiss that he was then fit to carry out the job duties as a police sergeant.

Busch contends that the Commission's order was not reasonably necessary for effectual and beneficial public service, an argument related to Cox's denial of Busch's request for light-duty work as a police officer. The Commission found that Cox had denied Busch's request based upon his discretionary authority as the City's manager. Although Busch notes that other employees had been granted such privileges, the record contains no indication that the City was required to permit Busch to return to work at light duty.

[13] Busch directs us to provisions in article II, § 10(f), of the City's ordinance No. 1855, which state that the Commission is not bound by the technical rules of evidence at its hearings. He contends that the Commission acted in an arbitrary and capricious manner by applying the technical rules of evidence at the October 2012 hearing. Although Busch claims that objections were improperly sustained to some of his proffered evidence, he does not guide us to specific instances of such erroneously suppressed evidence. To be considered by this court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013). Busch further complains of the admission of other evidence, most notably of an exhibit which contains a copy of the July 25 "Return to Work" form that released him to return to work on August 1 without restrictions. Busch asserts that this evidence should not have been considered by the Commission,

because it was not known to Cox when he made his decision to terminate Busch's employment. Indeed, the record reflects that when he decided to terminate Busch's employment, Cox was unaware that Busch had actually been released to return to work without restrictions. Nonetheless, Busch had, by that time, admitted to Cox that he had had a medical appointment on July 25, an admission that very much surprised Cox and resulted in a loss of trust in Busch. It was this act of omission by Busch that set in motion the final chain of events, starting with Cox's request for additional medical records and ending with Cox's filing the August 10 "Accusation." Notwithstanding the admission of evidence related to the release permitting Busch to return to work August 1, there remained sufficient evidence for the Commission to uphold Busch's termination of employment on the basis that he was physically unfit to perform his job. This assigned error is without merit.

## CROSS-APPEAL

In a cross-appeal, the Commission asserts that the district court erred in failing to tax to Busch the costs of preparing the transcript of the proceedings before the Commission. In its order, the district court noted that on the same date as Busch filed his petition in error, he filed a request for the Commission to prepare a verbatim record of the hearing before the Commission and file it with the district court. The court cited § 19-1833(5), which governs an appeal to that court from an order of a civil service commission, including the requirement for the appealing party to demand that "a certified transcript of the record and all papers, on file in the office of the commission affecting or relating to such judgment or order, be filed by the commission with such court." That subsection further provides:

> If such appeal is taken by the governing body and the district court affirms the decision of the commission, the municipality shall pay to the employee court costs and reasonable attorney's fees incurred as a result of such appeal and as approved by the district court.

If such appeal is taken by the governing body and the district court does not affirm the decision of the commission, the court may award court costs and reasonable attorney's fees to the employee as approved by the district court.

The district court found that § 19-1833(5) presupposes the court would have the evidence from the hearings for review and that for the statute to make sense, the documents contemplated in the phrase "transcript of the record" in subsection (5) would include a verbatim transcription of the record, including witness testimony and exhibits. The court further noted that the statute specifically authorizes the awarding of fees and costs when the appeal is taken by the "governing body," i.e., the Commission, but that the statute did not extend that authority when the appeal is taken by the "accused," i.e., Busch. Finding no statutory authority to award fees and costs in this case, the court denied the Commission's request.

On appeal to this court, the Commission attempts to distinguish between a transcript and a bill of exceptions for purposes of § 19-1833(5), arguing that it is not required to pay for the costs of the transcript of witness testimony and the like. The Commission further contends that payment for the bill of exceptions in this case is governed not by § 19-1833(5), but, rather, by Neb. Rev. Stat. § 25-1140.08 (Reissue 2008), which pertains to cases where specific provision is not made by law for a bill of exceptions in all appeals and petitions in error. We disagree.

[14,15] Section 19-1833(5) clearly governs appeals to the district court from an order of a civil service commission and the production of the record before the commission. The statute requires a certified transcript of the record "and all papers, on file in the office of the commission affecting or relating to such judgment or order." In addition, as pointed out by the district court, the Legislature did not authorize the award of fees or costs except when the appealing party was the "governing body." The only meaningful reading of § 19-1833(5) is that it required the Commission to provide to the district court a verbatim transcription of the proceedings before it on October 1 and 11, 2012, including all witness testimony and exhibits

offered at the hearing. There is no means of assessing related costs to Busch. The Commission's assigned error on cross-appeal is without merit.

## CONCLUSION

We conclude that none of Busch's assignments of error have merit. The record reflects that the Commission acted within its jurisdiction in affirming Busch's termination from his job, and its decision was supported by sufficient, relevant evidence. We find that the Commission's cross-appeal is also without merit.

Affirmed.